MARK D. LONERGAN (State Bar No. 143622)
EVELINA MANUKYAN (State Bar No. 233262)
THOMAS N. ABBOTT (State Bar No. 245568)
NATILEE S. RIEDMAN (State Bar No. 257871)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
FEDERAL HOME LOAN MORTGAGE
CORPORATION; and WELLS FARGO BANK,
N.A. (sued as Wells Fargo Bank, N.A., Wells
Fargo Home Mortgage, a division of Wells Fargo
Bank, N.A. and Wells Fargo & Company)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID M. CURLEY, SR.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO & COMPANY, a corporation; WELLS FARGO BANK, N.A., a subsidiary of Wells Fargo & Company, Inc., WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., THE FEDERAL HOME LOAN MORTGAGE CORPORATION, AND DOES 1-10,<br><br>　　　　Defendants. | Case No. CV 13-03805-NC<br><br>**DEFENDANTS' FURTHER BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Judge:　Hon. Nathanael Cousins<br><br><br><br>Action Filed:　August 16, 2013<br>Trial Date:　None Set |

Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac") and Wells Fargo Bank, N.A (erroneously sued as Wells Fargo and Company, a corporation, Wells Fargo Bank, N.A., a subsidiary of Wells Fargo and Company, Wells Fargo Home Mortgage, and Federal Home Loan Mortgage Corporation , a division of Wells Fargo Bank, N.A.,) (hereinafter, "Wells Fargo") (collectively, "Defendants") respectfully submit further briefing in support of their Motion to Dismiss, pursuant to the Court's October 11, 2013 order ("Order") (Docket No. 35.)

## I.  *CORVELLO* SHOULD NOT AFFECT THE COURT'S ANALYSIS OF THIS CASE

**A.    The *Corvello* Case**

In *Corvello*, the issue before the Ninth Circuit was whether Wells Fargo was contractually required to offer plaintiffs a permanent loan modification under the Home Affordable Modification Program ("HAMP") after the plaintiffs complied with the requirements of a trial period plan ("TTP").  Following the Seventh Circuit, the court held that the district court should not have dismissed plaintiffs' complaints when the record showed that Wells Fargo had accepted and retained the payments demanded by the TPP, but neither offered a permanent modification, nor notified the plaintiffs that they were not entitled to one, as required by the terms of the TPP.

In *Corvello*, paragraph 2F of the TTP alerted the borrower to the obligations of the parties before there could be a permanent modification.  It required, in addition to the borrower making the payments and maintaining the accuracy of the representations, that the servicer provide an executed copy of the TTP and Modification Agreement to the borrower.  (*Corvello*, 2013 WL 4017279, at *2.).  Paragraph 2G of the TTP stated that no modification would take effect until the borrower received a signed copy of the Modification Agreement from the bank.

Wells Fargo contended that paragraph 2G of the TTP meant that there can be no contract unless the servicer sends to the borrower a signed Modification Agreement.  Relying heavily on the HAMP guidelines and the underlying Treasury Supplemental Directive 09-01 ("SD 09-01"), the court rejected Wells Fargo's argument.  The court found the TTP to be internally inconsistent because it made the existence of any obligation conditional solely on the action of the bank, and conflicted with other provisions of the TPP, including the bank's promise to send the borrower a

Modification Agreement if the borrower complied with the obligations under the TPP and the borrower's representations continued to be true.  (*Corvello*, 2013 WL 4017279, at *4.)

### B.     Corvello Is Clearly Distinguishable

The facts of this case are glaringly different from *Corvello*.  The Court here not faced with an issue where the borrower complied with all the requirement of the TTP and was denied a modification based on a clause in the TTP which gave the lender an unfettered discretion to refuse to offer a modification agreement.  To the contrary, this is a case where it is the borrower who clearly failed to take the necessary steps to accept the offer contained in the TTP, and therefore no contact formed that would require Wells Fargo, the lender, to offer Curley, the borrower, a loan modification.

#### 1.     TTP was an offer, which Curley failed to accept

It is evident from the TTP itself, that it was an offer that required acceptance by undertaking certain steps by the offeree.

The cover letter that accompanied the TTP provided detailed instructions as to the steps that Curley needed to take in order to accept the offered TTP.  Complaint Ex. D, at 1.  Specifically, the letter stated in bold capital letters, that in order to take advantage of the *offer*, Curley had to: 1) provide certain financial information; and 2) let the bank know that he *accepts* the TTP by February 1, 2010.  (*Id.* )

The letter went on to provide a checklist of documents that Curley had to provide by February 1, 2010 in order to "[a]ccept this offer." Complaint Ex. D, at 2.  Among other items, Curley, who was self-employed, was required to provide verifiable proof of income in the form of the most recently filed (in this case, for 2008 and 2009) tax returns with all schedules.  (*Id.*)

Finally, the letter clearly stated that the "Trial Period Plan is the first step.  Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement….which will reflect the terms of the modified loan." Complaint Ex. D, at 3.

As more fully discussed in Wells Fargo's opening brief (Docket No. 4), unlike plaintiffs in *Corvello*, Curley failed to complete the steps necessary to accept the offer of the TTP.

1  Specifically, Curley did not provide the proof of verifiable income in the form of his 2008 and
2  2009 tax returns, which were required under the TTP in order for Curley to be reviewed for the
3  possibility of a permanent modification.  (Docket No. 4, at 6).  As late as July 16, 2010, Curley
4  admitted that he was unable to provide the necessary proof of income. (Docket No. 8, at 9).
5  Clearly, following Curley's own failure to meet the terms of the TTP, Wells Fargo was not
6  contractually obligation to offer Curley a loan modification.

7      **2.    Curley's complaint must fail even if TTP was a valid contract**

8  Alternatively, it is not necessary for this Court to find that the TTP was not a valid contract
9  in order to dismiss Curley's claims.  Regardless of whether or not a TTP constitutes a valid
10 contract, Courts recognize a lender has the opportunity during the Trial Period Plan to evaluate
11 whether or not the representations a borrower makes in the Trial Period Plan are true and accurate.
12 (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1504; *West v. JP Morgan*
13 *Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 798; *Sutcliffe v. Wells Fargo Bank, N.A.,* 283
14 F.R.D. 533, 553 (N.D. Cal. 2012); *Corvello v. Wells Fargo Bank, N.A.* 2013 WL 4017279 *1 (9th
15 Cir. 2013) .)  Even Courts that deem Trial Period Plans as enforceable contracts have held that the
16 contract requires a servicer to offer permanent modifications to borrowers who make the required
17 payments under the Trial Period Payment Plans *and* whose representations in Section 1 of the
18 Trial Period Plan remain true.  (*Young v. Wells Fargo, Bank*, N.A., 717 F.3d 224, 244-34 (1st Cir.
19 2013); *Sutcliffe*, 283 F.R.D. at 549-52; *West*, 214 Cal.App.4th at 780.)  It follows, then, that if the
20 borrower's representations do not remain true, then a servicer is under no obligation to provide the
21 borrower with a permanent modification.

22 That is precisely what happened in this case.  As stated above, and more fully discussed in
23 Defendants opening brief (Docket No. 4), because of Curley's failure to comply with the terms of
24 the TTP, Defendants were under no obligation to offer Curley a loan modification.

25                              **II.  CONCLUSION**

26 Plaintiffs in *Corvello* fully perfumed their obligations under their trial payment plan and
27 should have been either offered a loan modification or promptly informed of their ineligibility.  By
28 contrast, Curley here did not perform under the terms of the TTP.  Curley's claim of entitlement to

a loan modification, when he refused to supply one of the most essential pieces of information—a verifiable proof of income—defies logic.

Based on the foregoing and as discussed in Defendants' opening brief, Defendants respectfully requests that the Court dismiss Curley's complaint with prejudice.

DATED: October 18, 2013              Respectfully submitted,

                                     SEVERSON & WERSON
                                     A Professional Corporation


                                     By:    /s/ Evelina Manukyan
                                               Evelina Manukyan

                                     Attorneys for Defendants FEDERAL HOME LOAN
                                     MORTGAGE CORPORATION; and WELLS FARGO
                                     BANK, N.A. (sued as Wells Fargo Bank, N.A., Wells
                                     Fargo Home Mortgage, a division of Wells Fargo Bank,
                                     N.A. and Wells Fargo & Company)