RICHARD A. CANATELLA (SBN 53264)
Cotter & Del Carlo
4610 Mission Street, Fourth Floor
San Francisco, CA 94112
(415) 584-5446
(415) 584-5447 FAX

DAVID R. OLICK (SBN 72152)
3450 Sacramento Street, No. 509
San Francisco, CA 94118
(707) 750-1005
(925) 401-9419 FAX

Attorneys for Plaintiff David M. Curley, Sr.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID M. CURLEY, SR., | **No. CV 13-03805-NC** |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS COMPLAINT** |
| v. | |
| WELLS FARGO & COMPANY, a corporation; WELLS FARGO BANK, N.A., a subsidiary of Wells Fargo & Company, Inc., WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., THE FEDERAL HOME LOAN MORTGAGE CORPORATION, AND DOES 1-10, | Date: None<br>Crtrm.: A; 15th Floor<br>Judge: Hon. Nathanael M. Cousins<br><br>Removal Filed: August 16, 2013<br>Trial Date: None Set |
| Defendants._____/ | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

**I. BACKGROUND.**

On October 11, 2013, following a hearing October 9 on defendant's motion to dismiss the complaint, the Court ORDERED the parties to "submit further briefing addressing how the Ninth Circuit's decision in *Corvello* [*v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 2013 WL 4017279, 2013 U.S. App. LEXIS 16415 (9th Cir. 2013) (Corvello)] impacts the Court's analysis of the motion to dismiss. In the order the Court notes that "neither party cited (Corvello) in its papers.**"** **Order at 1.** *Corvello* addressed "whether [Wells Fargo] was contractually required to offer plaintiffs a permanent mortgage modification after they complied with the requirements of a trial period plan." **Id. 2013 WL 4017279 at *3.** Corvello was filed in the Ninth Circuit August 8, 2013, eight (8) days before plaintiff received notice of removal August 16. However, plaintiff did cite *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575, 586 (7th Cir. 2012) (Wigod) in opposition to dismissal filed September 6 **(see Dkt no. 27 at 16);** *Corvello* followed *Wigod* which reversed the district court's dismissal of a TPP-based breach of contract claim.

There was no excuse for plaintiff's failure to simply *shepardize Wigod*, however, which would have disclosed *Corvello* and thus could have been cited in plaintiff's opposition to Wells Fargo's motion to dismiss filed September 6. However, since Wells Fargo was a party in *Corvello*, they were presumably aware of the case. Nevertheless, plaintiff contends *Corvello* heavily impacts the Court's analysis of the motion to dismiss. Contrary to Wells Fargo's contention *Corvello* is very close on its facts to this case. In *Corvello* and this case Wells Fargo never offered the plaintiffs a loan modification after they fully complied with the requirements of a trial period plan ("TPP") by making all TPP payments. **Compare id. 2013 WL 4017279 at *3** *with* **complaint (Dkt 28.1 at page 19, lines 25 thru page 20, line 21).** At oral argument, Ms. Manukyan conceded "*plaintiff has made the trial payment plan payment(s).*" **R.T. 10-9-13 at 17:13.** Thus *Corvello* fairly leads to the conclusion that defendants' motion to dismiss should be denied.

**PLAINTIFF'S SUPPLEMENTAL BRIEF**     1

**II. RELEVANT EXCERPTS FROM THE ORAL ARGUMENT.**

At oral argument, the Court inquired of plaintiff's counsel:

> Let me try to understand plaintiff's theory about why I should pass on the motion to dismiss. Are you arguing that the plaintiff has substantially complied with his contractual obligations, or his nonperformance should be excused?

Mr. Canatella responded:

> Actually, we claim that there is a breach of contract. That's the heart of our case. Breach of contract and breach of the implied covenant. **R.T. at 11:3-10.**

The Court pressed:

> ... But they are saying: "*look, he didn't get his TPP, the temporary trial plan paperwork in on time. It required the financials on February 1st, 2010, and he said he couldn't do that.*" And they say: "*well, he's not complied with the plan. He can't have a claim here as a result of that*," and various other defenses, too. So give me your short summary as to why he shouldn't be knocked out of court here because he didn't comply with the plan himself. **R.T. at 11:11-22, emphasis added.**

> **Mr. Canatella:** well, those are fact questions, to begin with. And in our complaint we attach a number of exhibits that we believe are very specific under -- what is it, rule nine -- where we have Wells Fargo personnel agreeing that he did comply with the documentation requirements. It's right here in Exhibit F and, in fact, let me just read it to you, your Honor.

> **The Court:** Go ahead.

> **Mr. Canatella:** .... It says at Exhibit F -- it's Wells Fargo document 001089, ... And it says: "*all documents were received, yes,...*" [The servicer continued] "*and can we have the (foreclosure) sale date postponed*?" And the reason it couldn't be postponed, of course, was because Freddie Mac took the position they represented the investors and they weren't going to allow it to be postponed.... So I think that overcomes the document issue, at least for purposes of our proceeding here. **R.T. at 11:23-12:18.**

On the foregoing colloquy plaintiff demonstrated a cognizable legal theory supported by sufficient factual matter to state a facially plausible claim to relief. Indeed, plaintiff specifically alleged:

> Wells Fargo concealed from plaintiff an agreement or policy governing the relationship between Wells Fargo and Freddie Mac which permitted Freddie Mac to abrogate at its discretion Wells Fargo's promise to suspend or postpone foreclosure *even if plaintiff fulfilled the TPP requirements entitling him to a permanent loan modification*.... Id. (emphasis added).

**Dkt 28.1 at page 7, ¶ 13, lines 7 thru 11.** These allegations were sufficient under

**PLAINTIFF'S SUPPLEMENTAL BRIEF**     2

Corvello.[1]

The Court then turned to Ms. Manukyan:

Let's talk about the breach of contract claim. So if I find the plaintiff's performance, nonperformance is excused or they performed, Ms. Manukyan, could the plaintiff then allege a breach of contract?

**Ms. Manukyan:** no, Your Honor.

**The Court:** And why not?

**Ms. Manukyan:** your honor, I believe our position is pretty clearly stated in our moving papers and in the reply papers. And also with the benefit of your granting our request for judicial notice and knowing what went down in the state court, we believe that there is no breach of contract course (sic) of action for plaintiff. If there was a breach of contract it was the plaintiff who breached the trial payment plan....
**R.T. at 16:9-23; see also** Ms. Manukyan's argument at **R.T. 16:24-18:18**.

However, a cursory review of Wells Fargo's argument demonstrates its weakness. In the teeth of *Corvello* Wells Fargo took the untenable position that there was no contract and the TPP was merely an "agreement to agree" and that Wells Fargo could take the TPP payments with impunity. That position was rejected in *Corvello*:

> ...The issue we must decide is whether a bank was contractually required to offer the plaintiffs a permanent mortgage modification after they complied with the requirements of a trial period plan ("TPP"). The district court held the bank was not, and we reverse. ... [¶] Similar issues have arisen in both state and federal courts. We now follow the Seventh Circuit's leading federal appellate decision, which came down after the district court's ruling in this case, to hold that the bank was required to offer the modification. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). *The district court should not have dismissed the plaintiffs' complaints when the record before it showed that the bank had accepted and retained the payments demanded by the TPP, but neither offered a permanent modification, nor notified plaintiffs they were not entitled to one, as required by the terms of the TPP*.
>
> **Id. 2013 WL 4017279 at *3 (emphasis added).**

Moreover, the defense argument that plaintiff did not comply in time with

---

[1] In considering a 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "*only where there is no cognizable legal theory*" or there is an absence of "*sufficient factual matter to state a facially plausible claim to relief*." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (Shroyer) (emphasis added) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

**PLAINTIFF'S SUPPLEMENTAL BRIEF** 3

documentation requirements is undermined by Exhibit F to the complaint acknowledging that plaintiff fulfilled the requirements. This point was forcefully argued by Mr. Olick. **See R.T. at 19:14-20:16.**

### III. ANALYSIS AND ARGUMENT.

The parties agree that defendants took plaintiff's TPP payments without offering a permanent modification. **See plaintiff's argument at R.T. 19:12-19 (*"They took all the payments. They accepted them. They kept them...."*) and defendant's concession at R.T. 17:13 ("*Now, plaintiff has made the trial payment plan payment(s)*".)** On the foregoing undisputed facts, Corvello heavily impacts the Court's analysis of the motion to dismiss and inexorably leads to the conclusion that plaintiff stated a claim for relief.

Corvello held that a mortgage servicer like Wells Fargo must offer homeowners a permanant modification if the homeowners satisfied the terms of their trial payment plan. Like the plaintiff here, plaintiffs in *Corvello*, after falling behind on their mortgages, enrolled in a Trial Period Plan ("TPP") pursuant to the Treasury Department's Home Affordable Modification Program ("HAMP"). "The TPP requires borrowers to submit documentation to confirm the accuracy of their initial financial representations, and to make trial payments of the modified amount to the servicer." Id. 2013 U.S. App. LEXIS 16415, [WL] at *1. It is not controverted on this record that plaintiff confirmed the accuracy of his "initial financial representations" by "mak[ing] trial payments of the modified amount to the servicer" Wells Fargo. **R.T. 17:13 & 19:12-19.**

However, despite plaintiff's compliance with the TPP, like the *Corvello* plaintiffs he was never offered a permanent loan modification by Wells Fargo. And like the *Corvello* plaintiffs, he sued for breach of contract. **R.T. at 11:3-10.** The *Corvello* plaintiffs argued "they complied with their trial plans and made the required payments, and should have been offered permanent modifications." 2013 U.S. App. LEXIS 16415, [WL] at *2. Plaintiff makes an identical argument here.

**PLAINTIFF'S SUPPLEMENTAL BRIEF** 4

1    The district court in Corvello dismissed these breach of contract claims, however, finding that pursuant to the terms of the TPP, Wells Fargo was not obligated to offer a modification "unless and until" the borrower received a "fully executed copy of a Modification Agreement." 2013 U.S. App. LEXIS 16415, [WL] at *3. Because Wells Fargo had never sent the Corvello plaintiffs a copy of the modification agreement, the district court concluded that Wells Fargo was under no obligation to offer a permanent modification, and thus did not breach the TPP. Defendants make a very similar argument to this Court. **See R.T. 18:14-18 ["*But there's really never an entitlement to a modification whether based on the trial payment plan or in general. ...*"].**

The Ninth Circuit rejected that argument, concluding that because plaintiffs had fulfilled their obligations under the TPP, a "more natural and fair interpretation of the TPP," 2013 U.S. App. LEXIS 16415, [WL] at *5, required Wells Fargo to send the plaintiffs a copy of the Modification Agreement, and thus offer a permanent modification. In particular, the Ninth Circuit relied on language on the first page of the TPP stating that "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement." 2013 U.S. App. LEXIS 16415, [WL] at *2. Identical language appears in the TPP at issue here. **See Dkt 28-1 at page 65 of 94.**

In light of this clear language guaranteeing a permanent modification if the plaintiffs complied with their trial plans, the Ninth Circuit declined to "*convert a purported agreement setting forth clear obligations into a decision left to the unfettered discretion of the loan servicer.*" 2013 U.S. App. LEXIS 16415, [WL] at *5. This plaintiff thus clearly states a claim for breach of contract and defendants' motion to dismiss should be denied.

Dated: October 25, 2013           COTTER & DEL CARLO
                                  DAVID R. OLICK

                                  /s/ Richard A. Canatella
                                  By: Richard A. Canatella

**PLAINTIFF'S SUPPLEMENTAL BRIEF**      5