1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

### SAN FRANCISCO DIVISION

12

13

DAVID M. CURLEY,

Plaintiff,

14

v.

15

WELLS FARGO & CO., and others,

16

Defendants.

17

18

19

Case No. 13-cv-03805 NC

**ORDER DENYING MOTION TO REMAND; ORDER DENYING PLAINTIFF'S REQUEST FOR RULE 56(d) DISCOVERY; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 4, 17, 24, 25, 54, 62

20

21

22

23

24

25

26

27

28

        This case arises from Wells Fargo's foreclosure and sale of David Curley's house in Burlingame, California.  Curley alleges that Wells Fargo conspired with Freddie Mac to fraudulently deprive him of a permanent loan modification, despite Curley's full compliance with the terms of a trial period payment plan.  Curley asserts causes of action against Wells Fargo & Company, Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, and The Federal Home Loan Mortgage Corporation (Freddie Mac) for wrongful foreclosure, breach of the implied covenant of good faith and fair dealing, intentional fraud, promissory fraud, constructive fraud, and intentional infliction of emotional distress.  In

addition, Curley seeks a declaratory judgment that none of the defendants had authority to institute a non-judicial foreclosure in light of California Civil Code § 2924.11. Defendants moved for summary judgment and Curley requested a continuance and discovery under Federal Rule of Civil Procedure 56(d). The issues before the Court are (1) whether the case should be remanded to state court, (2) whether Curley is entitled to limited discovery before the Court rules on the motion for summary judgment, and (3) whether there are issues of material fact that preclude summary judgment. The Court denies Curley's motion to remand because the Court has subject matter jurisdiction under 12 U.S.C. § 1452(f) and 28 U.S.C. § 1332. Because the discovery Curley seeks would not preclude summary judgment, the Court denies Curley's Rule 56(d) request. The Court grants summary judgment on the wrongful foreclosure, fraud, and IIED claims because evidence necessary to prove those claims is absent from the record. The Court finds that Curley's request for a declaratory judgment is inappropriate because Curley merely seeks to redress past wrongs. The Court therefore grants summary judgment on that claim. The Court grants Freddie Mac's motion for summary judgment on the breach of the implied covenant of good faith and fair dealing claim because Freddie Mac is not a party to the contract that gives rise to that claim. Finally, because there are disputed issues of material fact that preclude summary judgment, the Court denies Wells Fargo's motion for summary judgment on the good faith and fair dealing claim.

# I. BACKGROUND

## A. Undisputed Facts

In 2006, Curley obtained a $356,000 fixed-rate loan from Wells Fargo Bank, N.A., secured by his home in Burlingame, California. Dkt. No. 54 at 12. As a result of the economic downturn in 2008 and 2009, Curley's coin-operated amusement and vending business struggled, and Curley's income declined. Dkt. No. 60 at 12. Curley defaulted on his loan. Dkt. No. 54 at 12. A notice of default was recorded on November 2, 2009. *Id.* at 13. Pursuant to the Home Affordable Modification Program ("HAMP"), Wells Fargo agreed to review Curley for a loan modification by offering him a trial period plan ("TPP").

1  Dkt. No. 54 at 13.

2       The offer for the TPP stated: "To accept this offer, and see if you qualify for a Home

3  Affordable Modification, fax items 1, 3, 4 and 5 listed below . . . and use the enclosed

4  return envelope to return your 1st payment no later than 01/30/2010." Dkt. No. 6 at 3.

5  Notably, item 5 of the TPP offer required "documentation to verify all of the income of

6  each borrower[,]" including a "[c]opy of the most recent filed federal tax return with all

7  schedules[.]" *Id.* To accept the offer, Curley was required to "send in both signed copies of

8  the Trial Period Plan, all required income documentation, and [his] first trial period

9  payment by . . . 02/01/2010." *Id.* The TPP provided that Wells Fargo would permanently

10  modify Curley's loan if (1) Curley was qualified for a loan modification under HAMP's

11  guidelines, and (2) Curley accepted the offer, submitted all necessary documentation, and

12  made all TPP payments. *Id.* at 2.

13       On July 1, 2010, a notice of sale was recorded. Dkt. No. 54 at 14. On July 21, 2010,

14  Wells Fargo's agent, Cal-Western Reconveyance Corporation, conducted a trustee's sale

15  and KMA Properties, LLC purchased Curley's home. *Id.*

16  **B.   Procedural History**

17       Curley filed a lawsuit against Wells Fargo and KMA Properties, LLC in the San

18  Mateo County Superior Court on August 12, 2010. Dkt. No. 54 at 14; Dkt. No. 55 at 4. In

19  that lawsuit, much like this suit, Curley asserted claims for breach of contract, promissory

20  fraud, constructive fraud, actual fraud, quiet title, breach of fiduciary duties, and

21  conversion. Dkt. No. 55 at 4. Discovery occurred between 2010 and February 2013 when

22  Wells Fargo filed a motion for summary judgment in the state court. Dkt. No. 54 at 14.

23  The state court issued a tentative ruling, finding no disputed issues of material fact because

24  it was undisputed that Curley did not provide verifiable proof of his income under the TPP.

25  *Id.* Before the state court ruled on the motion for summary judgment, however, Curley

26  moved to dismiss the action. *Id.* at 15. The San Mateo County Superior Court dismissed

27  Curley's case without prejudice on July 11, 2013. Dkt. No. 59 at 6.

28       On July 17, 2013, Curley filed this action in the San Francisco Superior Court. Dkt.

No. 1 at 2. Defendants removed to this Court on August, 16, 2013. Dkt. No. 1. Defendants then moved to dismiss Curley's claims. Dkt. No. 4. Curley moved to remand the action to state court and responded to the motion to dismiss. Dkt. Nos. 25, 27. Because the parties asked the Court to rely on evidence not properly before the Court on a motion to dismiss, the Court converted the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Dkt. No. 48. The Court then ordered all parties to file any supplemental materials pertinent to the motion for summary judgment. *Id.* After fully briefing the motion for summary judgment and submitting supplemental evidentiary materials, Curley requested limited discovery under Federal Rule of Civil Procedure 56(d). Dkt. No. 62.

**C.    Jurisdiction**

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Curley argues that this Court lacks subject matter jurisdiction, but for the reasons explained below, the Court finds that jurisdiction is proper under 12 U.S.C. § 1452(f) and 28 U.S.C. § 1332.

**II. ANALYSIS**

**A.    Motion to Remand to State Court**

Curley moves to remand the case to state court asserting that this Court lacks subject matter jurisdiction. Dkt. No. 25 at 6. A defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action. 28 U.S.C. § 1441. Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The presumption against removal means that the defendant always has the burden of establishing that removal is proper." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citation and internal quotation marks omitted).

The Court denies Curley's motion to remand because the Court has subject matter jurisdiction. Jurisdiction is proper as to Freddie Mac under 12 U.S.C. § 1452(f), which allows Freddie Mac to remove civil actions to federal court when it is a party. *See Durham*

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART AND
DENYING IN PART MSJ

4

1   *v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (holding that "a federal

2   officer or agency defendant can unilaterally remove a case").  Additionally, the Court has

3   diversity jurisdiction under 28 U.S.C. § 1332 to adjudicate the dispute between Curley and

4   Wells Fargo.  The amount in controversy exceeds $75,000 and complete diversity exists

5   between Curley, a citizen of California, and Wells Fargo, a citizen of South Dakota.

6   *Fernandez v. Wells Fargo Bank, N.A.*, No. 12-cv-03941 NC, 2012 WL 5350256, at *3

7   (N.D. Cal. Oct. 29, 2012) (holding that Wells Fargo is a citizen of South Dakota).  Because

8   subject matter jurisdiction is satisfied, the Court denies Curley's motion to remand.

9   **B.    Request for Rule 56(d) Discovery**

10          A party seeking relief under Rule 56(d) must show "(1) that they have set forth in

11   affidavit form the specific facts that they hope to elicit from further discovery, (2) that the

12   facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary

13   judgment motion."  *State of California ex rel. Cal. Dep't of Toxic Substances Control v.*

14   *Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).[1]  "The burden is on the party seeking

15   additional discovery to proffer sufficient facts to show that the evidence sought exists" and

16   that it would prevent summary judgment.  *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir.

17   1995); *see also Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100-01 (9th Cir. 2006)

18   (holding that district court did not abuse its discretion by denying request for a continuance

19   under Rule 56(f) where plaintiff did not show that additional discovery would have revealed

20   specific facts precluding summary judgment); *Michelman v. Lincoln Nat. Life Ins. Co.,* 685

21   F.3d 887, 899 (9th Cir. 2012) (holding that district court did not abuse its discretion by

22   denying request for Rule 56(d) discovery, even though discovery had not yet commenced,

23   because the proposed discovery did not pertain to the movant's breach of contract claim).

24          Curley requests discovery of two items under Federal Rule of Civil Procedure 56(d).

25   Dkt. No. 62.  First, Curley seeks to discover letters that Wells Fargo allegedly sent to

26

27   ───────────────
    [1] "Rule 56(d) was formerly Rule 56(f).  Precedent under Rule 56(f) applies to Rule 56(d)." *Zamora v. City of Oakland*, No. 12-cv-02734 NC, 2013 WL 4103109, at *3 n.1 (N.D. Cal. Aug. 12, 2013)
28   (citing *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018, 1027 n.3 (N.D. Cal. 2012)).

Curley, but which Curley never received. *Id.* at 2-3.  The declaration submitted in support of Curley's discovery declares that these letters, which allegedly terminated the offer for permanent loan modification and requested additional materials, were sent before he accepted the TPP on January 3, 2010. *Id.*  Curley argues that these letters would evidence fraud and breach of the implied covenant of good faith and fair dealing, but he does not explain how the letters would evidence those claims or why they would help Curley avoid summary judgment. *Id.* at 3-4.

Second, Curley would like to depose Antoine Burwell, a Wells Fargo employee who made a log entry stating, "ALL DOCS RECEIVED?=YES  DATE FULL PACKAGE RECEIVED IN LIV:=07/16/2010 . . . . ADD'L NOTES: CAN WE HAVE THE SALE DATE POSTPONED?  ENTERED BY ANTOINE BURWELL ON 07/16/2010."  Dkt. No. 62 at 4.  Curley argues that Mr. Burwell "can shed light on how the note logs are created, stored, and kept[,]" but he does not explain why this evidence is essential to preclude summary judgment. *Id.* at 5.

Curley's request for Rule 56(d) discovery is denied because it would not help him preclude summary judgment on the wrongful foreclosure, fraud, IIED, and declaratory judgment claims.  Curley has not explained how the letters or the deposition would address the evidentiary deficiencies discussed below.  The discovery Curley seeks would not evidence tender for the wrongful foreclosure claim, causation for the fraud claims, or emotional distress for the IIED claim.  Nor could the discovery show that Curley seeks to remedy a present controversy to preclude summary judgment on the declaratory judgment claim.  Further, because the Court denies summary judgment on the good faith and fair dealing claim, the discovery is not necessary to "present facts essential to justify [Curley's] opposition" as to that claim.  Fed. R. Civ. P. 56(d).

## C.    Motion for Summary Judgment

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 330 (1986); *Vander v. U.S. Dep't of Justice*, 268 F.3d 661, 663 (9th Cir. 2001). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Bald assertions that genuine issues of material fact exist are insufficient." *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by [discovery materials], designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); Fed. R. Civ. P. 56(c).

### i.    Wrongful Foreclosure

Defendants argue that summary judgment is appropriate on the wrongful foreclosure claim because there is no evidence that Curley tendered his debt. To establish wrongful foreclosure, a plaintiff must prove "that (1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or were excused from tendering." *Chavez v. Indymac Mortgage Servs.*, 162 Cal. Rptr. 3d 382, 390 (Ct. App. 2013). "The tender rule applies not only to suits seeking to set aside a foreclosure but also to certain suits seeking damages." *Ottolini v. Bank of Am.*, No. 11-cv-00477 EMC, 2011 WL 3652501, at *3 (N.D. Cal. Aug. 19, 2011). A plaintiff is exempt from the tender rule only when:

> (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred.

*Chavez*, 162 Cal. Rptr. 3d at 390.

Defendants are entitled to summary judgment on the wrongful foreclosure claim

because the undisputed evidence shows that Curley did not tender the amount of his secured

debt and there is no evidence in the record to show that an exception to the tender rule

applies.  Curley states in his deposition testimony that he did not have money to tender

when the foreclosure sale occurred:

> "Q.  To begin with, on page 1 [of the Trustee's Deed Upon Sale ] it states the
> unpaid debt was [$]367,773.  At the time in July of 2010, did you have money
> in this amount approximately to repay the entire loan if you had to?  A.  No."

Dkt. No. 55-2 at 9.  Because there is no evidence of tender or evidence that an exception to

the tender rule applies, there are no genuine issues of material fact regarding the wrongful

foreclosure claim, and defendants are entitled to summary judgment.  *Williams v.*

*Countrywide Home Loans, Inc.*, No. 99-cv-00242 SC, 1999 WL 740375, at *2 (N.D. Cal.

Sept. 20, 1999) (granting motion for summary judgment where plaintiff admitted in

deposition that he did not have sufficient funds to tender when foreclosure sale occurred).

### ii.    Fraud

Defendants are entitled to summary judgment on the intentional fraud, promissory

fraud, and constructive fraud claims because there are no disputed issues of material fact

regarding causation.  "[T]here are two causation elements in a fraud cause of action.  First,

the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have

caused him to take a detrimental course of action.  Second, the detrimental action taken by

the plaintiff must have caused his alleged damage."  *Beckwith v. Dahl*, 141 Cal. Rptr. 3d

142, 161 (Ct. App. 2012).

The evidence of causation is insufficient to preclude summary judgment on the fraud

claims.  Curley argues that he submitted documents and made TPP payments in reliance on

Wells Fargo's promise to give him a permanent loan modification.  Dkt. No. 60 at 29.

Additionally, Curley alleges that he suffered damage by losing his house.  Dkt. No. 1 at 54,

58.  It is undisputed, however, that Curley's acts in reliance did not cause his damage.  No

evidence suggests that submitting documents and making TPP payments caused Curley to

lose his house.  Rather, the evidence suggests that Curley's failure to stay current with his

original mortgage payments, Curley's arguable failure to submit documents required by the

TPP, or Wells Fargo's alleged breach of the TPP contract caused the loss of his house. Because it is undisputed that Curley's reliance on Wells Fargo's representations did not cause the harm Curley alleges, defendants are entitled to summary judgment on the fraud claims. *See Deschaine v. IndyMac Mortgage Servs.*, No. CIV. 2:13-1991 WBS, 2014 WL 281112, at *5 (E.D. Cal. Jan. 23, 2014) ("Because plaintiff repeatedly defaulted prior to any alleged misrepresentations, his allegation that those misrepresentations resulted in the foreclosure of his home is implausible.").

### iii.    Intentional Infliction of Emotional Distress

Defendants argue that they are entitled to summary judgment on the IIED claim because there is no evidence of emotional distress. "The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Super. Ct.*, 820 P.2d 181, 202 (Cal. 1991) (internal quotation marks omitted) (quoting *Davidson v. City of Westminister*, 649 P.2d 894, 901 (Cal. 1982)). "Severe emotional distress is described as emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Duste v. Chevron Prods. Co.*, 738 F. Supp. 2d 1027, 1040 (N.D. Cal. 2010) (internal quotation marks omitted).

Defendants correctly state that there is no evidence of emotional distress in the record. Dkt. No. 54 at 32-33. Curley's opposition brief does not address the IIED claim and the supplementary materials submitted with the opposition are devoid of emotional distress evidence. Because defendants have demonstrated that evidence of an essential element of Curley's claim is absent, and because Curley has not designated specific facts demonstrating that a genuine issue of material fact regarding emotional distress exists, defendants are entitled to summary judgment on the IIED claim. *Duste*, 738 F. Supp. 2d at 1040 (granting motion for summary judgment on IIED claim because "[p]laintiff fail[ed] to

1  point to any evidence of severe emotional distress"); *see also Simo v. Union of*

2  *Needletrades, Indus. & Textile Emps., Sw. Dist. Council*, 322 F.3d 602, 622 (9th Cir. 2003)

3  (holding that defendants were entitled to summary judgment on IIED claim for lack of

4  severe emotional distress evidence, even though plaintiffs testified to feeling fearful,

5  nervous, tense, and emotionally hurt).

6  **iv.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

7  Defendants argue that they are entitled to summary judgment on the breach of implied

8  covenant of good faith and fair dealing claim because the undisputed evidence shows that

9  (1) Curley did not accept the TPP contract, (2) Curley did not perform under the contract,

10  (3) defendants did not cause Curley's injury, and (4) defendants did not deceive Curley by

11  concealing Freddie Mac's involvement with the TPP.  Dkt. No. 54 at 13, 22, 24, 26-28.

12  Contrary to defendants' position, the Court finds that there are disputed issues of material

13  fact regarding the good faith and fair dealing claim.

14  "A claim for breach of the implied covenant of good faith and fair dealing requires

15  the same elements [as a claim for breach of contract], except that instead of showing that

16  defendant breached a contractual duty, the plaintiff must show, in essence, that defendant

17  deprived the plaintiff of a benefit conferred by the contract in violation of the parties'

18  expectations at the time of contracting."  *Levy v. JP Morgan Chase*, No. 10-cv-01493 DMS

19  BLM, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).  "The elements of a cause of

20  action for breach of contract are: 1) the existence of the contract; 2) performance by the

21  plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages."

22  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 954 (N.D. Cal.

23  2012).

24  Defendants first argue that the undisputed evidence shows that Curley did not accept

25  the offer for a TPP.  Dkt. No. 54 at 13, 25-26.  Specifically, defendants argue that

26  acceptance of the TPP required Curley to submit copies of his 2008 and 2009 federal tax

27  returns by February 1, 2010, and Curley did not do so.  *Id.*

28  The Court, however, finds that three pieces of evidence give rise to a genuine issue of

1   material fact about whether Curley accepted the TPP offer.  First, Wells Fargo's loss

2   mitigation notes from January 2, 2010 state, "TRIAL APPROVED."  Dkt. No. 60-1 at 23.

3   Second, Wells Fargo's employee testified in deposition that Curley was accepted into a

4   TPP.  Dkt. No. 59 at 16 ("Q.  Now Mr. Curley was accepted into a trial period plan, wasn't

5   he?  A.  Yes he was.").  Third, and most importantly, the TPP offer did not expressly

6   require Curley to submit his 2008 and 2009 tax returns.  Rather, the TPP offer required

7   "documentation to verify all of the income of each borrower[,]" including a "[c]opy of the

8   *most recent filed federal tax return* with all schedules[.]"  Dkt. No. 57 at 6 (emphasis

9   added).  Curley states in his declaration that on January 3, 2010, when Curley sent Wells

10  Fargo the signed copies of the TPP and other TTP-related paperwork, the "most recently

11  filed federal tax return" in his possession was his 2007 tax return.  Dkt. No. 60-1 at 6.

12  Curley declares that he sent his 2007 tax return to Wells Fargo, as evidenced by a copy of

13  the 2007 tax return bearing Wells Fargo's bate stamp.  Dkt. No. 60-1 at 31.  Although

14  Curley's declaration does not expressly state whether Curley submitted the 2007 tax return

15  before the expiration of the TPP offer, the Court is required to "draw[] all reasonable

16  inferences in favor of the nonmoving party[.]"  *Vander*, 268 F.3d at 663.  In light of

17  Curley's declaration and the copy of the 2007 tax return bearing Wells Fargo's bate stamp,

18  the Court must infer that Curley submitted the tax return by the deadline to accept the TPP

19  offer.  Therefore, there is a disputed issue of material fact as to whether Curley accepted the

20  TPP offer.  If Curley accepted the TPP, the "existence of a contract" element is satisfied.

21  *Corvello*, 728 F.3d at 883-84 (holding that Wells Fargo's TPP may be an enforceable

22  contract).

23       Second, defendants contend that the undisputed facts demonstrate that Curley did not

24  perform under the TPP because (1) Curley did not submit his 2008 and 2009 tax returns and

25  (2) Curley made misrepresentations about his ability to make his mortgage payments,

26  violating a condition for receiving a permanent loan modification.  Dkt. No. 54 at 13-14,

27  23-24.  Specifically, defendants argue that Curley's deposition testimony demonstrates that

28  he violated the TPP by misrepresenting his ability to make mortgage payments in his TPP

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART AND                          11
DENYING IN PART MSJ

and hardship affidavit. *Id.* at 23-24.  Curley represented on his TPP that he "did not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future."  Dkt. No. 57 at 9.  He also checked the box in his hardship affidavit indicating "My cash reserves are insufficient to maintain the payment on my mortgage loan and cover basic living expenses at the same time."  Dkt. No. 55-1 at 11.  In deposition, Curley testified that he could make his mortgage payments when he sought the loan modification, but to do so he "would have to cut back on [his] social life and watch expenses very closely."  Dkt. No. 55-1 at 56.

Contrary to defendants' position, the Court finds disputed issues of material fact regarding Curley's performance under the TPP.  The Court does not accept defendants' tax return argument because, as discussed above, the TPP required only that Curley submit his most recently filed tax return, and Curley identified evidence that he sent Wells Fargo a copy of his 2007 tax return.  Dkt. No. 60-1 at 31.  The Court does not accept defendants' misrepresentation argument because doing so would require the Court to make an inference in defendants' favor.  Curley's deposition testimony is only inconsistent with the hardship affidavit if the Court infers that social life expenses are not basic living expenses.  Because the Court is required on a motion for summary judgment to make all reasonable inferences for Curley, the Court declines to make the inference defendants request.  Whether Curley misrepresented his ability to make mortgage payments is therefore a disputed issue of material fact better left to a jury.

Defendants do not challenge Curley's performance on the grounds that Curley failed to make TPP payments.  Rather, it is undisputed that Curley made three timely TPP payments and two additional payments on May 1 and June 1, 2010.  Dkt. No. 59 at 16; Dkt. No. 60-1 at 5.  Because the undisputed evidence shows that Curley complied with the TPP payment requirements and there are disputed issues of material fact about whether Curley submitted his 2007 tax return or misrepresented his ability to make mortgage payments, the Court finds that summary judgment is improper on the performance element.

Third, defendants argue that the undisputed facts show that they did not cause

1  Curley's damage.  Dkt. No. 54 at 24.  Defendants cite Curley's deposition testimony in

2  which he states that he knew about the trustee's sale and had the funds necessary to bring

3  the loan current to avoid the sale, but chose not to do so because he was "pissed off."  *Id.*

4  Because Curley's failure to bring the loan current caused him to lose his house, defendants

5  argue that they did not cause Curley's damage.  *Id.*

6      The Court finds that there are disputed issues of material fact regarding causation.

7  Although Curley does not dispute that he had the funds necessary to pay the past-due

8  arrearage, he states in his declaration that bringing the loan current would not have avoided

9  foreclosure because Wells Fargo accelerated the principal loan balance on September 14,

10  2009, requiring that Curley pay the entire loan balance of $362,367 to avoid foreclosure.

11  Dkt. No. 60-1 at 4.  Curley testified in deposition that he did not have that amount of money

12  when the foreclosure sale occurred.  Dkt. No. 55-2 at 9.  Because there is evidence that

13  Curley did not have the necessary funds to prevent the foreclosure sale, the Court finds that

14  there are disputed issues of material fact about whether Curley's own conduct or

15  defendants' alleged breach of the TPP caused Curley to lose his home.

16      Finally, defendants argue that the undisputed facts show that, contrary to Curley's

17  allegations, Wells Fargo did not breach the implied covenant of good faith and fair dealing

18  by concealing Freddie Mac's involvement with the loan.  Dkt. No. 54 at 27-28.  Defendants

19  cite to the TPP offer and TPP-related forms, which prominently display Freddie Mac's logo.

20  *Id.*  Because Freddie Mac's logo was on the TPP paperwork, defendants argue that it is

21  undisputed that Wells Fargo did not breach the TPP by concealing Freddie Mac's

22  involvement.  *Id.*

23      Curley argues that the mere fact that the TPP paperwork displayed Freddie Mac's

24  logo does not mean that Curley knew Freddie Mac had "veto power" over whether Curley

25  would receive a permanent loan modification, which is the basis for Curley's breach of the

26  implied covenant of good faith and fair dealing claim.  Dkt. No. 60 at 30.  As evidence of

27  Freddie Mac's "veto power," Curley cites deposition testimony in which a Wells Fargo

28  employee said that Freddie Mac or Freddie Mac's guidelines determine whether or not a

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART AND                13
DENYING IN PART MSJ

1   foreclosure may be postponed. Dkt. No. 60 at 24-25.

2          The Court finds that there are disputed issues of material fact regarding Wells

3   Fargo's alleged breach of the duty of good faith and fair dealing.  On a motion for summary

4   judgment, the Court cannot infer that Curley must have known the extent of Freddie Mac's

5   control over the TPP simply because Freddie Mac's logo was on the TPP paperwork.  Even

6   if the Court could make such an inference, Curley cites three additional pieces of evidence

7   that suggest that Wells Fargo may have "deprived [him] of a benefit conferred by the

8   contract in violation of the parties' expectations at the time of contracting."  *Levy*, 2010 WL

9   4641033, at *3.  First, the TPP offer stated that Wells Fargo would send Curley either a

10  copy of the proposed loan modification or a notification that he did not qualify for the offer

11  after he returned signed copies of the TPP, but Curley declares that Wells Fargo did not do

12  so. Dkt. No. 60-1 at 2.  This suggests that, from the beginning of the TPP period, Wells

13  Fargo may not have intended to uphold its end of the bargain.  Second, a Wells Fargo

14  employee testified in deposition that "it was an investor decision" made by Freddie Mac not

15  to postpone the foreclosure sale, indicating that Wells Fargo gave Freddie Mac the power to

16  deny Curley a permanent loan modification regardless of whether Curley performed under

17  the TPP. Dkt. No. 59 at 17.  Finally, Wells Fargo accelerated Curley's loan after accepting

18  four TPP payments, indicating that Wells Fargo was benefitting from the TPP without

19  giving Curley the benefit of the bargain. Dkt. No. 60-1 at 8.  In light of the evidence

20  presented to the Court, the Court agrees with Curley that there is an issue of material fact

21  about whether Wells Fargo breached the implied covenant of good faith and fair dealing by

22  giving Freddie Mac unfettered discretion to deny the permanent loan modification or by

23  engaging in other unfair conduct.

24         Defendants argue that Freddie Mac is entitled to summary judgment on the good faith

25  and fair dealing claim because Curley does not allege any conduct on Freddie Mac's part.

26  Dkt. No. 54 at 15-16.  This is an overstatement, as Curley does provide evidence that

27  Freddie Mac may have made the decision not to postpone the foreclosure sale. Dkt. No. 60

28  at 24-25.

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART AND                  14
DENYING IN PART MSJ

1    The Court, however, finds that Freddie Mac is entitled to summary judgment because,

2    unlike Wells Fargo, Freddie Mac was not a party to the TPP contract and therefore cannot

3    be liable for the good faith and fair dealing claim.  "Although an action for bad faith breach

4    of the covenant of good faith and fair dealing sounds in tort, the duty of good faith and fair

5    dealing derives from and exists solely because of the contractual relationship between the

6    parties."  *Austero v. Nat'l Cas. Co.*, 133 Cal. Rptr. 107, 110 (Ct. App. 1976).  "Thus, one

7    who is not a party to the underlying contract may not be held liable for breach of an implied

8    covenant of good faith and fair dealing for as to him no such implied covenant exists."

9    *Austero*, 133 Cal. Rptr. at 110.  Because the TPP is signed by Wells Fargo, not Freddie

10   Mac, and Curley does not allege that Freddie Mac is a party to the contract, Freddie Mac

11   cannot be liable for breaching the implied covenant of good faith and fair dealing.  *Lent v.*

12   *JP Morgan Chase Bank, N.A.*, No. SACV 11-345 DOC RNBX, 2011 WL 5971190, at *3

13   (C.D. Cal. Nov. 29, 2011) (dismissing claim against Freddie Mac for breach of the implied

14   covenant of good faith and fair dealing because Freddie Mac was not a party to the loan

15   modification agreement between loan-servicer JP Morgan and plaintiff, even though

16   Freddie Mac owned the loan); *see also Miller v. Massi*, No. 06-cv-02106 PCTFJM, 2007

17   WL 841398, at *6 (D. Ariz. Mar. 16, 2007) (dismissing claim for breach of the implied

18   covenant of good faith and fair dealing against third party that interfered with the contract

19   because "interference does not give rise to a breach of the covenant of good faith and fair

20   dealing, because a party may only breach a contract to which it is bound").

21       In sum, because it is undisputed that Curley suffered damage by losing his house,

22   and there are disputed issues of material fact regarding Curley's acceptance of the TPP,

23   Curley's performance under the TPP, and Wells Fargo's performance under the TPP, the

24   Court denies Wells Fargo's motion for summary judgment on the breach of the implied

25   covenant of good faith and fair dealing claim.  However, the Court grants summary

26   judgment on the good faith and fair dealing claim asserted against Freddie Mac because

27   Freddie Mac was not a party to the TPP.

28       **v.    Declaratory Judgment**

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART AND                15
DENYING IN PART MSJ

Defendants are entitled to summary judgment on Curley's claim for declaratory judgment. "Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs." *Canova v. Trs. of Imperial Irr. Dist. Emp. Pension Plan*, 59 Cal. Rptr. 3d 587, 595 (Ct. App. 2007). "[W]here there is an accrued cause of action for a past breach of contract or other wrong, or where an adequate remedy exists at law, declaratory relief is inappropriate." *Sanchez v. MortgageIt, Inc.*, No. 10-cv-04146 PJH, 2011 WL 588178, at *3 (N.D. Cal. Feb. 10, 2011) (citing *Canova*, 59 Cal. Rptr. 3d at 595); *Metcalf v. Drexel Lending Grp.*, No. 08-cv-00731 W POR, 2008 WL 4748134, at *5 (S.D. Cal. Oct. 29, 2008) ("Where there is an accrued cause of action for a past breach of contract or other wrong, declaratory relief is inappropriate.").

Here, declaratory relief is inappropriate because the foreclosure sale already occurred, Curley does not seek a declaration of future rights, and Curley has a claim for breach of the implied covenant of good faith and fair dealing. *Sanchez*, 2011 WL 588178, at *3 (dismissing with prejudice plaintiff's claim for declaratory judgment because the foreclosure sale had already occurred and plaintiff only sought to redress past wrongs); *Edejer v. DHI Mortgage Co.*, No. 09-cv-01302 PJH, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) (same); *Ferrari v. U.S. Bank, N.A.*, No. 09-cv-02908 PJH, 2009 WL 3353028, at *4 (N.D. Cal. Oct. 16, 2009) (same). The Court therefore grants defendants' motion for summary judgment on the declaratory judgment claim.

### III. CONCLUSION

For the reasons stated above, the Court denies Curley's motion to remand the case to state court and Curley's request for Rule 56(d) discovery. The Court grants defendants' motion for summary judgment on the wrongful foreclosure, fraud, IIED, and declaratory judgment claims. The Court grants summary judgment as to Freddie Mac on the breach of the implied covenant of good faith and fair dealing claim, but denies summary judgment on that claim with respect to the remaining defendants. Defendants' motion to strike, Dkt. No. 17, and Curley's motion to extend time, Dkt. No. 24, are denied as moot. This order resolves motions pending at docket numbers 4, 17, 24, 25, 54, and 62. The CMC remains

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART AND
DENYING IN PART MSJ

16

1  on calendar for March 12, 2014, and will be held at 2:00 p.m.

2

3      IT IS SO ORDERED.

4      Date:  March 10, 2014

5                                        _____

6                                        Nathanael M. Cousins
                                         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28