UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID M. CURLEY, SR., <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO & CO., and others, <br><br> Defendants. | Case No. 13-cv-03805 NC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND** <br><br> Re: Dkt. No. 78 |

    Plaintiff in this mortgage foreclosure case seeks leave to amend to add several causes of action to his complaint. The Court previously granted summary judgment against all but one of plaintiff's claims, after converting a motion to dismiss to a summary judgment motion. Because leave to amend must be granted except where no set of facts could state a claim, the Court grants leave to amend to add claims for intentional and constructive fraud against defendant Wells Fargo, as well as claims for interference with contract and interference with prospective economic advantage against defendant Freddie Mac. The Court denies leave to amend to add claims for interference with contract or with prospective economic advantage against defendant Wells Fargo. The Court also denies leave to amend to add fraud claims against defendant Freddie Mac.

**BACKGROUND**

This case stems from plaintiff's failed attempt to secure a loan modification and the subsequent foreclosure sale of his home. The Court will not repeat the lengthy factual and procedural history of this case, which the Court reviewed in its order granting in part summary judgment at docket entry 67. Since that order, plaintiff filed for leave to amend his complaint to add several causes of action, in addition to the claim for breach of the covenant of good faith and fair dealing, which survived summary judgment. Dkt. No. 78. The Court heard oral argument on the motion on May 14, 2014. Dkt. No. 87. Both parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 21, 23.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a) provides generally that leave to amend the pleadings before trial should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks omitted). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted).

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal[.]" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). To determine whether a proposed amendment is futile, the Court must consider whether there is a set of factual allegations that, if pleaded, could satisfy the 12(b)(6) and 9(b) pleading standards. *See In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1111 (N.D. Cal. 2003) ("[I]n order to analyze the potential futility of the [proposed third

1  amended complaint], this court must determine if it withstands Rules 12(b)(6) and 9(b), or
2  if it suffers from the same inadequacies as the [second amended complaint].").
3        To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with
4  sufficient specificity to "give the defendant fair notice of what the claim is and the grounds
5  upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A]
6  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief
7  that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual
8  content that allows the court to draw the reasonable inference that the defendant is liable for
9  the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted)
10 (internal quotation marks omitted). To plead fraud or mistake under Rule 9(b), "a party
11 must state with particularity the circumstances constituting fraud or mistake. Malice, intent,
12 knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.
13 Civ. P. 9(b).

## DISCUSSION

**A.  Intentional Fraud Claims**

16       To bring a claim for the tort of fraudulent misrepresentation, the plaintiff must
17 allege: 1) a misrepresentation; 2) knowledge of falsity (or 'scienter'); 3) intent to defraud,
18 i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage. *Lazar v. Superior*
19 *Court*, 12 Cal. 4th 631, 638 (1996).
20       Promissory fraud is a particular type of fraudulent misrepresentation. When "a
21 promise is made without such intention, there is an implied misrepresentation of fact that
22 may be actionable fraud." *Id.* An action for promissory fraud may lie where a defendant
23 fraudulently induces the plaintiff to enter into a contract. *Chelini v. Nieri*, 32 Cal. 2d 480,
24 487 (1948). In those cases, the plaintiff's claim does not depend upon whether the
25 defendant's promise is ultimately enforceable as a contract. "If it is enforceable, the
26 [plaintiff] . . . has a cause of action in tort as an alternative at least, and perhaps in some
27 instances in addition to his cause of action on the contract." *Lazar*, 12 Cal. 4th at 638. But
28 recovery may be limited by the rule against double recovery of tort and contract

compensatory damages. *Id.*

Here, plaintiff seeks to amend his complaint to add a claim for promissory fraud and a claim for intentional fraud against both Wells Fargo and Freddie Mac. Dkt. No. 79 at 12-13. The Court previously granted summary judgment on all fraud claims because plaintiff failed to point to evidence showing that his reliance on Wells Fargo's misrepresentation caused his harm. Dkt. No. 67 at 8 ("No evidence suggests that submitting documents and making TPP payments caused Curley to lose his house."). In his proposed amended complaint, plaintiff alleges that the "detrimental action taken by the plaintiff was to rely on Wells Fargo's assurance which directly caused damage by the foreclosure of his home." Dkt. No. 79 at 13. These allegations suffer from the same defect that caused the Court to grant summary judgment on the fraud claims, in that they do not specify what actions plaintiff took that caused the loss of his home.

In his reply in support of his motion for leave to amend, however, plaintiff clarifies that "Curley's reliance made him forego other alternatives such as filing a Chapter 13 and submitting a plan with a mortgage 'cram down.' . . . He also might have obtained privacy financing [sic] to help him or he could have sold [his house] on the market for a much higher amount." Dkt. No. 86 at 3. This set of facts could sufficiently allege that Curley was harmed by relying on Wells Fargo's promise to offer him a loan modification if he complied with the TPP, because Curley did enter into the TPP and forewent other options that may have saved his home. Because there is a "set of facts [that] can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," the Court must grant leave to amend the intentional fraud claim as to defendant Wells Fargo. *Rykoff-Sexton, Inc.*, 845 F.2d at 214.

But plaintiff has not included any facts in his proposed amended complaint or in his motion for leave to amend that would indicate that plaintiff had any contact with anyone at Freddie Mac, yet alone that he justifiably relied on some misrepresentation made by Freddie Mac. Leave to amend is thus denied to add a claim for intentional fraud against Freddie Mac.

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART
MOTION FOR LEAVE TO AMEND
4

The Court also notes that Curley's proposed amended complaint sets forth separate claims for intentional fraud and promissory fraud, with nearly identical allegations. These claims are duplicative, as promissory fraud is merely a type of intentional fraud. *Lazar*, 12 Cal. 4th at 638 ("'Promissory fraud' is a subspecies of the action for fraud and deceit."). Therefore, Curley may amend his complaint to allege only one claim for intentional or promissory fraud against defendant Wells Fargo.

**B.    Constructive Fraud Claims**

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted). The test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

Plaintiff argues, without citing any supporting authority, that by offering a TPP, Wells Fargo stepped outside the scope of a traditional money-lender relationship and thus created a fiduciary duty. California courts are squarely divided on this issue. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. 13-cv-05881 LB, 2014 WL 890016, at *17 (N.D. Cal. Mar. 3, 2014) (gathering cases). But several cases in our District have recently found

that a lender may have a special duty of care when engaging in the loan modification process. *See id.* ("While a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it, as well as a duty to not foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices."); *Faulks v. Wells Fargo & Co.*, No. 13-cv-02871 MEJ, 2014 WL 1922185, at *8 (N.D. Cal. May 13, 2014) ("the Court is inclined to find that Wells Fargo owed Plaintiff a duty of care in processing his loan modification application."); *Rowland v. JPMorgan Chase Bank, N.A.*, No. 14-cv-00036 LB, 2014 WL 992005 (N.D. Cal. Mar. 12, 2014) (same).

Because there is a set of facts under which Wells Fargo may owe plaintiff a fiduciary duty and thus may have engaged in constructive fraud, the Court grants leave to amend to add a claim for constructive fraud against defendant Wells Fargo, if plaintiff can allege facts supporting each element. But plaintiff has offered no theory and alleges no facts in his proposed amended complaint indicating that he had a fiduciary relationship with Freddie Mac, and leave to amend is thus denied to add a claim for constructive fraud against Freddie Mac.

## C.   Interference with Contract Claim

A plaintiff bringing a claim for the tort of intentional interference with contractual relations must allege: "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004). To prevail, a plaintiff must show that the defendant "knew the interference was certain or substantially certain to occur as the result of its action." *Id.* Because the status of a defendant's relationship to the contract impacts a defendant's liability for an interference claim, the Court addresses claims for each defendant separately.

### i. Wells Fargo

Under California law, a party to a contract may not be held liable for tortious interference with the performance of that contract. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 514 (1994); *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, No. 12-cv-56809, 2014 WL 1910598, at *3 (9th Cir. May 14, 2014) (explaining that contractual, not tort, liability protects the contracting parties from one another). It is undisputed that Wells Fargo was a contracting party—plaintiff's complaint is focused on the alleged breach of the contract between plaintiff and Wells Fargo. Therefore, Wells Fargo cannot be liable for tortious interference of contract as a matter of law. *See Reeves*, 33 Cal. 4th at 1148. The proposed amendment adding a claim against Wells Fargo for interference with contract is therefore futile and leave to add the claim is denied.

### ii. Freddie Mac

The parties dispute whether Freddie Mac is a stranger to the TPP contract between plaintiff and Wells Fargo. Freddie Mac argues that its economic interest in the contract renders it a non-stranger and therefore immune from tort liability, citing *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc*. 271 F.3d 825, 832 (9th Cir. 2001) ("[T]he core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship . . . ."). That case, in dictum, indicates only that "an entity with a direct interest or involvement in that relationship is not *usually* liable for harm caused by pursuit of its interests." *Id.* (emphasis added). To the extent that courts have read this to impose an additional requirement—that a party must have no financial interest in the outcome of the contract—to the five listed in *Reeves v. Hanlon*, they have erred. *United Nat.*, 2014 WL 1910598, at *3 ("The district court's reading of *Marin Tug* to add an additional requirement to the tort of intentional interference with contractual relationship is not justified for several reasons.").

Whereas a party to a contract is subject to contractual liability, a non-party with a financial interest in the contract is not. The Ninth Circuit has explained that if courts allowed non-parties to interfere in contracts without being liable for an interference claim,

"[a] party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability.  This result is particularly perverse as it is those parties with some type of economic interest in a contract whom would have the greatest incentive to interfere with it." *United Nat.*, 2014 WL 1910598, at *3; *see also Woods v. Fox Broad. Sub., Inc.*, 121 Cal. App. 4th 344, 355 (2005) (declining to extend immunity from a contract interference claim to the defendant possessing "no more than an economic interest or connection" to a contract between the plaintiff and a third party).  Freddie Mac is not immune from an interference claim solely because it has an economic interest in the performance of the contract.  Therefore, plaintiff's proposed amendment is not futile because some "set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Rykoff-Sexton, Inc.*, 845 F.2d at 214.  Leave to add this claim against Freddie Mac is granted, if plaintiff can allege facts sufficient to support each element of the tort.

**D.    Interference with Prospective Economic Advantage Claim**

A plaintiff bringing a claim for the tort of intentional interference with prospective economic advantage must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003) (internal quotation marks omitted).  A plaintiff seeking to recover for intentional interference with prospective economic relations must "prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).  An act is independently wrongful "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v.*

*Lockheed Martin*, 29 Cal. 4th at 1159. As with the interference with contract claim, the Court must consider the proposed claim against each defendant separately.

### i. Wells Fargo

Plaintiff's proposed claim for intentional interference with prospective economic advantage ("IIPEA") against defendant Wells Fargo fails because plaintiff cannot allege that Wells Fargo interfered with a prospective third-party economic relationship. *See Korea Supply v. Lockheed Martin*, 29 Cal. 4th at 1153. To the extent that plaintiff argues that Wells Fargo interfered with the future economic benefits of the TPP contract, plaintiff requires Wells Fargo to be both a contracting party and a non-contracting third-party. This being impossible, the Court finds plaintiff's proposed amended claim for IIPEA against defendant Wells Fargo futile, and leave to amend to add the claim is denied.

### ii. Freddie Mac

Because it is not a party to the economic relationship between plaintiff and Wells Fargo, Freddie Mac may be liable for IIPEA, provided plaintiff alleges facts sufficient to meet the elements of the tort. S*ee id.* at 1166 ("An actor engaging in unlawful conduct with the knowledge that its actions are certain or substantially certain to interfere with a party's business expectancy should be held accountable."); s*ee also Kasparian v. Cnty. of L.A.*, 38 Cal. App. 4th 242 (1995) (holding that a party to a prospective contract may not be liable for IIEPA).

However, plaintiff's current proposed amended complaint does not state facts sufficient to establish a reasonable inference that Freddie Mac intentionally acted to disrupt the economic relationship between plaintiff and Wells Fargo. *See Iqbal*, 556 U.S. at 633. Rather, it contains only allegations without supporting facts. Further, plaintiff insufficiently alleges facts to support the proposition that Freddie Mac "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna*, 11 Cal. 4th at 393. But as there is a potential "set of facts [that] can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," plaintiff's proposed amended claim is not futile. *Rykoff-Sexton, Inc.*, 845 F.2d at 214. The

Court grants leave to amend with respect to the IIPEA claim against Freddie Mac to the extent that plaintiff can allege facts supporting its claim that Freddie Mac intentionally engaged in wrongful conduct that disrupted a future economic benefit to plaintiff.

### E.   Statute of Limitations

Defendants argue that plaintiff's proposed interference with contract or prospective advantage claims are futile because the statute of limitations on those claims has run. Dkt. No. 81 at 3-4. The Court finds that plaintiff must be given an opportunity to allege facts that would show that his claims are nonetheless actionable due to the discovery rule.

In California, the statute of limitations is two years for interference with contract or interference with prospective business advantage claims. Code Civ. Proc. § 339(1); *Tu-Vu Drive-In Corp. v. Davies*, 66 Cal.2d 435, 437 (1967). The interference claim accrues from the date of the wrongful act, which can be no later "than the actual breach of the contract by the party who was wrongfully induced to breach." *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974).

Here, the date the statute of limitations began to run was, at the very latest, July 21, 2010—the date that plaintiff's home was sold in a trustee's sale. Plaintiff filed this action on August 17, 2013, which is more than two years after the date of the sale. It would appear then, that plaintiff's interference claims are barred by the statute of limitations. However, plaintiff argues that the statute of limitations should be tolled, because plaintiff could not have discovered the interference until a deposition on May 17, 2013, when a witness revealed Freddie Mac's role in the loan modification decision. Dkt. No. 86 at 5.

The Court finds that plaintiff must be given an opportunity to amend his complaint to include facts that would excuse his claim from being barred by the statute of limitations. In California, "[t]he discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Korea Supply Co. v. Lockheed Martin Corp.*, 109 Cal. Rptr. 2d 417, 428 (Ct. App. 2001), *rev'd in part on other grounds*, 29 Cal. 4th 1134 (2003). California courts have applied the discovery rule to claims for

interference with prospective business advantage or interference with contract. *Id.* (interference with prospective advantage); *Forcier v. Microsoft Corp.*, 123 F.Supp.2d 520, 531 (N.D. Cal. 2000) (interference with contract). Because there is a set of facts that could state a claim for interference with contract or prospective advantage that would be actionable despite the statute of limitations, the Court must grant leave to amend. Plaintiff may amend his complaint to add these claims only if he can allege facts showing that the discovery rule applies and his claims are thus actionable despite the statute of limitations.

**F.     Breach of Contract**

Although neither party has addressed the issue, the Court notes that plaintiff's proposed amended complaint adds a claim for breach of contract, whereas his earlier complaint alleged a claim for breach of the implied covenant of good faith and fair dealing but not breach of contract. Dkt. No. 79. Because the Court has already ruled that a TPP can be an actionable contract, Dkt. No. 67, the Court now finds that there is a set of facts that plaintiff could allege that would prove a breach of contract claim. The Court thus grants leave to amend to add this claim.

## CONCLUSION

For the reasons explained, the Court grants leave to amend for plaintiff to add claims for intentional and constructive fraud against defendant Wells Fargo, as well as claims for interference with contract and interference with prospective economic advantage against defendant Freddie Mac. The Court denies leave to amend to add claims for interference with contract or with prospective economic advantage against defendant Wells Fargo. The Court also denies leave to amend to add fraud claims against defendant Freddie Mac. Plaintiff must file his amended complaint within fourteen days of this order.

IT IS SO ORDERED.

Date:  May 23, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 13-cv-03805 NC
ORDER GRANTING IN PART
MOTION FOR LEAVE TO AMEND