UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID CURLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO & CO., and others,<br><br>　　　　Defendants. | Case No. 13-cv-03805 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 93 |

　　　Plaintiff David Curley alleges that Wells Fargo, along with Freddie Mac, fraudulently deprived him of a permanent loan modification, despite Curley's compliance with the terms of a trial period payment plan. According to Curley, he justifiably relied upon Wells Fargo's promise not to start foreclosure proceedings so long as he fulfilled his contractual obligations under the plan. He claims to have suffered damages when Wells Fargo foreclosed on his home. Wells Fargo and Freddie Mac seek to dismiss all of Curley's causes of action, as alleged in the First Amended Complaint. For the reasons discussed below, the Court DENIES Wells Fargo's motion to dismiss Curley's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional fraud. The Court DENIES in part and GRANTS in part Well's Fargo's motion

to dismiss Curley's constructive fraud claim.  The Court GRANTS Freddie Mac's motion to dismiss Curley's claims for intentional interference with contract, and intentional interference with prospective economic advantage.

## I. BACKGROUND

### A. Facts

This case stems from Curley's failed attempt to secure a loan modification and the subsequent foreclosure sale of his home.  The following relevant facts come from Curley's First Amendment Complaint.  Dkt. No. 92.

In 2006, Curley obtained a $356,000 fixed-rate loan from Wells Fargo Bank, secured by his home in Burlingame, California.  Dkt. No. 92 at 4.  As a result of the economic downturn in 2008 and 2009, Curley's coin-operated amusement and vending business struggled, and Curley's income declined.  *Id.*  Curley defaulted on his loan.  *Id.*  A notice of default was recorded on November 2, 2009.  *Id.*  Pursuant to the Home Affordable Modification Program ("HAMP"), Wells Fargo agreed to review Curley for a loan modification by offering him a trial period plan ("TPP").  *Id.*

According to the complaint, the offer stated, "If you qualify under the federal governments [sic] Home Affordable Modification program and comply with the terms of the Trial Period Plan (TPP) we will modify your mortgage loan and you can avoid foreclosure." *Id.* at 5.  Another part of the offer states: "As long as you comply with the terms of the Trial Period Plan we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started . . . ." *Id.*

This TPP offer further stated: "To accept this offer, and see if you qualify for a Home Affordable Modification, fax items 1, 3, 4 and 5 listed below . . . and use the enclosed return envelope to return your 1st payment no later than 01/30/2010." *Id.*  Notably, item 5 of the TPP offer required "documentation to verify all of the income of each borrower[,]" including a "[c]opy of the most recent filed federal tax return with all schedules[.]" *Id.*  To accept the offer, Curley was required to "send in both signed copies of the Trial Period Plan, all required income documentation, and [his] first trial period payment by . . .

Case No. 13-cv-03805 NC
MOTION TO DISMISS FIRST
AMENDED COMPLAINT                        2

02/01/2010." *Id.* The TPP provided that Wells Fargo would permanently modify Curley's loan if (1) Curley was qualified for a loan modification under HAMP's guidelines, and (2) Curley accepted the offer, submitted all necessary documentation, and made all TPP payments. *Id.* According to the complaint, "the TPP offer stated that Wells Fargo would send plaintiff either a copy of the proposed loan modification or a notification that he did not qualify for the offer after he returned signed copies of the TPP." *Id.* at 4.

According to Curley, he timely accepted this TPP offer on January 3, 2010, and formed a contract with Wells Fargo. *Id.* Curley alleges that he made three loan payments of $1,836.75 under the TPP on the first of each month beginning February 1, 2010, through April 1, 2010. *Id.* He made an additional payment in May, but his additional payment for June 1, 2010, was rejected without explanation from Wells Fargo. *Id.* Curley states that he also submitted a hardship application, his most recent tax return, profit and loss statements, and proof of income and expenses. *Id.* at 5-6.

According to Curley, Wells Fargo and Freddie Mac had an agreement that "permitted Freddie Mac to abrogate at its discretion Wells Fargo's promise to suspend or postpone foreclosure even if [Curley] fulfilled the TPP requirements entitling him to a permanent loan modification." *Id.* at 6. Curley claims that Wells Fargo "concealed" from plaintiff this agreement with Freddie Mac. *Id.*

On July 1, 2010, a notice of sale was recorded. *Id.* at 6. On July 21, 2010, Wells Fargo's agent, Cal-Western Reconveyance Corporation, conducted a trustee's sale and KMA Properties, LLC purchased Curley's home. *Id.* According to Curley, the sale took place despite the fact that he "provided all required documentation and otherwise complied with his obligations under the TPP." *Id.* Moreover, Wells Fargo neither provided Curley with a copy of the proposed loan modification nor a notification that he did not qualify. *Id.* at 4.

**B.   Procedural History**

On July 17, 2013, Curley filed this action in the San Francisco Superior Court. Dkt. No. 1 at 2. Defendants removed to this Court on August, 16, 2013. Dkt. No. 1. Defendants

then moved to dismiss Curley's claims. Dkt. No. 4. Curley moved to remand the action to state court and responded to the motion to dismiss. Dkt. Nos. 25, 27. Because the parties asked the Court to rely on evidence not properly before the Court on a motion to dismiss, the Court converted the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Dkt. No. 48.

The Court denied Curley's motion to remand the case to state court a well as a request by Curley for Rule 56(d) discovery. Dkt. No. 67. Additionally, the Court granted defendants' motion for summary judgment on Curley's wrongful foreclosure, fraud, intentional infliction of emotional distress, and declaratory judgment claims. The Court granted summary judgment as to Freddie Mac on the breach of implied covenant of good faith and fair dealing claim, but denied summary judgment on that claim with respect to Wells Fargo.

Since that summary judgment order, the Court granted Curley's motion for leave to amend his complaint to add claims for breach of contract, as well as intentional and constructive fraud against Wells Fargo, and claims for interference with contract and interference with prospective economic advantage claims against Freddie Mac. Dkt. No. 89. Curley had submitted a proposed amended complaint with his motion. Dkt. No. 79. Curley subsequently filed a First Amended Complaint, alleging these claims, in addition to the claim for breach of the implied covenant of good faith and fair dealing, which survived summary judgment. Dkt. No. 92. Defendants now move to dismiss all of Curley's claims alleged in the amended complaint. Dkt. No. 93. The Court vacated the hearing on the motion. Dkt. No. 103.

Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 21, 23.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light

most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III.  DISCUSSION

**A.  Request for Judicial Notice**

As a preliminary matter, the Court addresses Wells Fargo's request for judicial notice of documents submitted in connection with its motion to dismiss. Dkt. No. 94.

Generally, a court may not look to matters beyond the complaint without converting a motion to dismiss into one for summary judgment. *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citations omitted). However, a court may take judicial notice of material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), "a judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned." *Datel Holdings*, 712 F. Supp. 2d at 983. A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

Here, the Court did not rely upon the documents for which Wells Fargo requested

Case No. 13-cv-03805 NC
MOTION TO DISMISS FIRST
AMENDED COMPLAINT                5

judicial notice in reaching its conclusion in this order.  Thus, its request for judicial notice is denied.

Yet Wells Fargo asserts that this Court already took judicial notice of certain documents—namely a document entitled "Retention Workout Option Checklist"—at a hearing on October 9, 2013, concerning defendants' motion to dismiss Curley's initial complaint.  Dkt. No. 93 at 11.  In that hearing the Court asked, "Does the plaintiff object to the defendants' request for judicial notice?"  Dkt. No. 36 at 4:4-5.  The plaintiff did not object.  *Id.* at 4:9.  The Court stated, "All right.  So the request for judicial notice as part of the motion to dismiss is granted.  And that's as to the state court proceedings that . . . were not disputed as to what took place."  *Id.* at 4:10-13.  Thus, the Court specifically limited its judicial notice to undisputed documents that demonstrated the state court proceedings took place (e.g., official docket from the state court action).  The Court did not take judicial notice of the myriad underlying exhibits that may have accompanied various motions in those state court proceedings.  In its current motion to dismiss, Wells Fargo does not submit a request for judicial notice of the "Retention Workout Option Checklist."

In short, the Court did not then, and does not now take judicial notice of the "Retention Workout Option Checklist," Dkt. No. 10 at 50.  Wells Fargo also did not request for the Court to take judicial notice of this or other documents in its current request for judicial notice.  *See* Dkt. No. 94.

### B. Breach of Contract and Breach of Implied Covenant (Claim 1)

Curley brings claims against Wells Fargo for breach of contract and breach of the implied covenant of good faith and fair dealing.  Because these two causes of actions do not consist of the same elements, the Court will separate its analysis of each claim.

#### i. Breach of Contract

The elements to be pleaded in an action for breach of contract are: (1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff.  *Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (1969); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp.

2d 928, 954 (N.D. Cal. 2012).

### a. Existence of Contract

Here, Curley contends that he accepted the TPP offer on January 3, 2010, and thus entered into a contract with Wells Fargo. Dkt. No. 92 at ¶ 10. This Court already stated that "[i]f Curley accepted the TPP, the 'existence of a contract' claim is satisfied." Dkt. No. 67 at 11 (citing *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 883-84 (9th Cir. 2013) (holding that Wells Fargo's TPP may be an enforceable contract)). And indeed, for the purposes of its motion, Wells Fargo accepts that the TPP was a valid contract. Dkt. No. 93 at 19. The first element for a breach of contract action is therefore satisfied.

### b. Plaintiff's Performance of Contract

As to plaintiff's performance, on the one hand, Curley contends that he performed under the terms of the contract by providing all of the required documentation, including his most recent filed tax return and three different monthly loan payments under the TPP. Dkt. No. 92 at 7. On the other hand, Wells Fargo argues that Curley failed to perform under the TPP "because he did not provide the requisite proof of income." Dkt. No. 93 at 18. In addition to the three trial plan payments, Wells Fargo contends that Curley at a minimum had to submit his 2008 or 2009 tax returns, a requirement under the "Retention Workout Option Checklist." *See id.* at 18-19. But as stated above, the Court does not take judicial of this document. Furthermore, Wells Fargo's defense that Curley failed to submit all the correct paperwork and did not fulfill his obligations under the TPP "presents a factual dispute that cannot be resolved [at the motion to dismiss stage]." *Corvello*, 728 F.3d at 885 (internal quotation marks omitted) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 579 (7th Cir. 2012)). Taking the allegations of material fact as true and construing them in a light most favorable to non-movant Curley, the Court finds that Curley has satisfied the element of performance. *See Cahill*, 80 F.3d at 337-38.

### c. Defendant's Breach of Contract

As to the third element of breach, Curley alleges that Wells Fargo failed to either "send plaintiff a copy of the proposed loan modification or a notification that he did not

qualify for the offer after he returned signed copies of the TPP." Dkt. No. 92 at ¶ 7; Dkt. No. 99 at 12 (opposition brief).  Because the TPP contractually required Wells Fargo to take one of these two actions, Wells Fargo's failure to perform constitutes a breach.  *See Corvello*, 728 F.3d at 883-84 (finding that where borrowers fulfilled obligations under a TPP, and loan servicer failed to abide by terms of TPP entitling borrower to loan modification or timely notification that they do not qualify, "borrowers have valid claims for breach of the TPP agreement"); *see also Wigod*, 673 F.3d at 562-63 (banks required to offer permanent modifications to borrowers who completed obligations under TPPs, unless banks timely notified borrowers that they did not qualify for a HAMP modification). Furthermore, Curley does allege that the TPP states Wells Fargo would not initiate foreclosure proceedings so long as the borrower complied with the TPP.  By foreclosing on Curley's home, even though Curley complied with the terms of the TPP, Curley sufficiently alleged that Wells Fargo breached the TPP agreement.

Still, the amended complaint lists several dozen allegations against Wells Fargo that are not tied to specific terms of the contract and would not constitute a breach on Wells Fargo's part.  Dkt. No. 92 at ¶ 17 (e.g., failure to provide adequate staffing, failure to perform proper loan modification underwriting).  For instance, the allegation that Wells Fargo "wrongfully den[ied] plaintiff's permanent loan modification though he substantially performed all covenants on his part" will not serve as a basis for a breach of contract claim. Curley has not alleged that the TPP states compliance with the TPP alone will result in a permanent loan modification. Similarly, Curley states that Wells Fargo wrongfully concealed from him an agreement between Wells Fargo and Freddie Mac that gave Freddie Mac the power to decide when to honor the TPP.  As Wells Fargo correctly points out, however, Curley has not alleged a section of the TPP that Wells Fargo breached in allegedly failing to disclose information about Freddie Mac.  Dkt. No. 93 at 19.

### d.   Damages

Finally, as to the final element in a breach of contract claim, Curley has sufficiently alleged that Wells Fargo's breach resulted in damage to him.  Curley alleges that the TPP

states, "As long as you comply with the term of the Trial Period Plan we will not start foreclosure proceedings[.]" Dkt. No. 92 at ¶ 10. Curley alleges that he fully complied with the TPP by making timely payments to Wells Fargo and submitted all of the necessary paperwork. *Id.* at ¶ 12. Yet Wells Fargo initiated foreclosure proceedings, and Curley suffered the damages of losing his home.

In sum, to the extent that Curley's allegations for breach of contract involve Well's Fargo's promise not to foreclose so long as Curley complied with the TPP terms, or Well's Fargo's failure to provide notification that Curley did not qualify for a permanent loan modification, the motion to dismiss is DENIED.

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing

The duty of good faith and fair dealing is implied by law into every contract, functioning "as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Gonzalez v. JP Morgan Chase Bank, N.A.*, No. 14-cv-2558 EMC, 2014 U.S. Dist. LEXIS 152674, *19-20 (N.D. Cal. Oct. 28, 2014) (quoting *Thrifty Payless, Inc. v. Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013)).

In the foreclosure context, violations of this duty involve specific contract terms. These terms can relate to a loan servicer's decision to foreclose despite a borrower's compliance with specific provisions of a trial modification plan, *Erickson v. PNC Mortgage*, 2011 WL 1743875, at *2 (D. Nev. May 6, 2011) (denying motion to dismiss breach of good faith and fair dealing claim), or a servicer's decision to foreclose despite the existence of a servicer participation agreement prohibiting foreclosure while a loan modification application was pending, *Blackwood v. Wells Fargo Bank, N.A.*, 2011 WL 1561024, at *5 (D. Mass. Apr. 22, 2011) (same).

"A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant

deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Levy v. JP Morgan Chase*, No. 10-cv-01493 DMS BLM, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).

Here, in addition to finding that Curley has sufficiently alleged facts supporting the elements for a claim of breach of contract, the Court also finds that Curley alleged facts that Wells Fargo "deprived [him] of a benefit conferred by the contract in violation of the parties' expectations[.]" *Levy*, 2010 WL 4641033, at *3. For instance, the TPP offer stated that Wells Fargo would send Curley either a copy of the proposed loan modification or a notification that he did not qualify for the offer after he returned signed copies of the TPP. Dkt. No. 92 at ¶ 7. Curley alleges that Wells Fargo failed to do so. *Id.* Curley also alleged that Wells Fargo "accelerated his loan after accepting four TPP payments, indicating that Wells Fargo was benefiting from the TPP without giving plaintiff the benefit of the bargain." *Id.* at ¶ 8.

Accordingly, the Court DENIES Wells Fargo's motion to dismiss the breach of the implied covenant of good faith and fair dealing claim.

### C.   Constructive Fraud Claim Against Wells Fargo (Claim 2)

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000). Much like other fraud claims, a claim of constructive fraud is subject to heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. *Guerrero v. Greenpoint Mortgage Funding, Inc.*, 403 Fed. App'x 154, 156 (9th Cir. 2010). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed

the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted). The test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.

Curley alleges that by offering a TPP, Wells Fargo stepped outside the scope of a traditional moneylender relationship and thus created a fiduciary duty. Dkt. No. 92, ¶ 22. California courts are squarely divided on this issue. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. 13-cv-05881 LB, 2014 WL 890016, at *17 (N.D. Cal. Mar. 3, 2014) (gathering cases). But several cases in our District have recently found that a lender may have a special duty of care when engaging in the loan modification process. *See id.* ("While a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it[.]"); *Faulks v. Wells Fargo & Co.*, No. 13-cv-02871 MEJ, 2014 WL 1922185, at *8 (N.D. Cal. May 13, 2014) ("the Court is inclined to find that Wells Fargo owed Plaintiff a duty of care in processing his loan modification application"); *Rowland v. JP Morgan Chase Bank, N.A.*, No. 14-cv-0036 LB, 2014 WL 992005 (N.D. Cal. Mar. 12, 2014) (same).

### i. Terms of the TPP

Here, Wells Fargo owed Curley a duty of care because it formed a contract with Curley that involved the loan modification process. Indeed, the TPP offered to permanently modify Curley's loan if he qualified under the HAMP's guidelines, submitted the required paperwork, and made all TPP payments. Moreover, under the TPP, Wells Fargo explicitly committed not to begin foreclosure proceedings as long as Curley

complied with the terms of the TPP.  Taking Curley's allegations as true and construing them in the light most favorable to him, Curley complied with all of the requirements under the TPP.  Nonetheless, Wells Fargo began foreclosure proceedings; doing so constituted an "act . . . involving a breach of legal or equitable duty, trust or confidence which result[ed] in damage [to Curley]."  *See Assilzadeh*, 82 Cal. App. 4th at 415; *see also Rijhwani*, 2014 WL 890016, at *17 (lender had "a duty not to foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices.").  Curley sufficiently alleges damages in the form of loss of his home through foreclosure proceedings, attorney's fees and costs and expenses spent in defending two unlawful detainer actions, and his timely payments under the TPP.  Dkt. No. 92 at ¶ 25.

Because Wells Fargo owed Curley a duty not to foreclose on his home so long as Curley complied with the terms of the TPP, the Court DENIES Wells Fargo's motion to dismiss as to the constructive fraud claim.

### ii.   Failure to Disclose Information About Freddie Mac

Curley, however, has not established how Wells Fargo's duty of care as to the loan modification process creates a duty to disclose Freddie Mac's involvement in the loan modification process.  Curley claims that Wells Fargo concealed information that Freddie Mac was the owner of the loan and that Freddie Mac had decision-making authority over the modification application.  Dkt. No. 92 at ¶¶ 21, 23.  Yet Curley does not explain why Wells Fargo possessed an obligation to disclose this information to Curley while processing the loan modification application.  He also does not cite to any authority that states the actual owner of the loan—as opposed to the loan servicer—must be disclosed to the borrower in order to ensure proper processing of a loan modification request.

Accordingly, the Court GRANTS Wells Fargo's motion to dismiss Curley's constructive fraud claim to the extent Curley alleges that Wells Fargo's failure to disclose Freddie Mac's involvement in the loan modification process constitutes fraud.

//

### D.   Intentional Fraud Claim Against Wells Fargo (Claim 3)

To bring a claim for the tort of fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

In the amended complaint under the intentional fraud cause of action, Curley alleged that on December 31, 2009, Wells Fargo made false representations in the TPP that as long as Curley complied with the terms of the agreement, Wells Fargo would not start foreclosure proceedings. Wells Fargo argues that Curley failed to allege (1) the misrepresentation with specificity, (2) justifiable reliance, and (3) that Curley's reliance on Wells Fargo's misrepresentations caused him to suffer damages. Dkt. No. 93 at 21-25.

#### i.   Specificity

Fraud must be pleaded with specificity rather than with "general and conclusory allegations." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 184 (2003). "This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered." *Lazar*, 12 Cal. 4th at 645 (internal quotation marks and citation omitted). "In the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 793 (2013) (citing *Lazar*, 12 Cal. 4th at 645). The specificity requirement's purpose is to give defendants notice of sufficiently definite charges, and permit the court to weed out meritless fraud claims. *Id.*

Here, Curley meets the specificity requirement. He alleged that Wells Fargo made misrepresentations in the TPP, a written agreement, on December 31, 2009. Dkt. No. 92 at ¶¶ 9-12. Curley includes the specific language from the TPP in his complaint that details what documents Wells Fargo required him to submit, and the exact payments amounts he needed to make in order to accept the TPP offer. *Id.* Curley also includes in his complaint

the specific language of the TPP stating that "[a]s long as you comply with the terms of the Trial Period Plan we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started . . . ." *Id.* at ¶ 10.

While Curley does not identify who prepared the TPP, Curley did not have to plead that information because it was uniquely within Wells Fargo's knowledge. *West*, 214 Cal. App. 4th at 793 (finding that plaintiff in foreclosure case did not have to identify who prepared letter sent to plaintiff that contained alleged misrepresentation because "it was uniquely within [defendant] Chase Bank's knowledge) (citing *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248 (2011) ("While the precise identities of the employees responsible . . . are not specified in the loan instrument, defendants possess the superior knowledge of who was responsible for crafting these loan documents.") (internal quotation marks omitted)). Curley's allegation that the misrepresentations were made in writing through the TPP is sufficient to give notice to Wells Fargo of the charges.

### ii. Justifiable Reliance

"Besides actual reliance, [a] plaintiff must also show justifiable reliance, i.e., circumstances were such to make it *reasonable* for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation. The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." *Id.* at 794 (internal quotation marks and citations omitted).

Here, Wells Fargo argues that Curley's alleged reliance claims are too vague to sustain a misrepresentation claim. Dkt. No. 93 at 22. But Curley specifically alleges that his "reliance made him forego other alternatives such as filing [for] Chapter 13 [bankruptcy] and submitting a plan with a mortgage 'cram down,' private financing or simply selling [the house] on the open market." Dkt. No. 92, ¶ 29. This Court had previously held that "[t]his set of facts could sufficiently allege that Curley was harmed by relying on Wells Fargo's promise to offer him a loan modification if he complied with the TPP, because Curley did enter into the TPP and forewent other options that may have saved his home." Dkt. No. 89 at 4.

Case No. 13-cv-03805 NC
MOTION TO DISMISS FIRST
AMENDED COMPLAINT                14

Thus, Curley properly alleges that he justifiably relied on Wells Fargo's representation that it would not foreclose on his home so long as he performed his contractual obligations.

### iii. Causation

Wells Fargo argues that Curley's allegations do not show that any damages he suffered resulted from Wells Fargo's conduct. Dkt. No. 93 at 24. Curley claims that in reliance on Wells Fargo's alleged misrepresentations—that it would not conduct foreclosure proceedings as long as he complied with the terms of the TPP, and would send him a notification if he did not qualify for a loan modification—he suffered damages. Dkt. No. 92 at ¶¶ 28-30. These damages include "loss of his house for 30 years through the foreclosure proceeding, attorneys fees costs and expenses defending two unlawful detainer actions to remove him, [and] his timely payments under the TPP[.]" *Id*. Wells Fargo argues that Curley already owed the mortgage payments and had to make them regardless of the alleged misrepresentations. Dkt. No. 93 at 24.

Curley also alleged, however, that Wells Fargo made him forgo other alternatives such as filing for bankruptcy or pursuing other types of financing. The amended complaint may be reasonably construed to allege that Curley's reliance on Wells Fargo's alleged misrepresentations—including the promise that he would at least receive notification if he did not qualify for a loan modification—caused Curley to forgo taking action to avoid foreclosure.

In short, the Court finds that Curley sufficiently alleged a claim for intentional fraud and DENIES Wells Fargo's motion to dismiss as to this claim.

### E. Interference With Contract Claim Against Freddie Mac (Claim 4)

A plaintiff bringing a claim for the tort of intentional interference with contractual relations must allege: "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Reeves v. Hanlon*,

33 Cal. 4th 1140, 1148 (2004).  To prevail, a plaintiff must show that the defendant "knew the interference was certain or substantially certain to occur as the result of its action." *Id*.

Here, Curley does not sufficiently allege that Freddie Mac intentionally acted to induce a breach or disruption of the contractual relationship between Curley and Wells Fargo.  Curley claims that Wells Fargo expert Julia Greenfield testified in a deposition that the decision not to postpone foreclosure of Curley's house was an "investor decision"; Curley alleges this "investor" was Freddie Mac.  Dkt. No. 92 at ¶ 34.  But in that same paragraph Curley alleges that Greenfield also testified that the decision to move forward with the foreclosure was "[b]ased on investor guidelines" and that "the guidelines of the investor would dictate that they could (or would) not postpone the sale at that point." *Id*.

Contrary to Curley's assertion, this testimony does not constitute a sufficient allegation of fact that would establish a reasonable inference that Freddie Mac intentionally acted to induce Wells Fargo's alleged breach.  From Greenfield's testimony, the decision to foreclose may just well have been Well's Fargo's.  In other words, Wells Fargo's decision may have resulted from its adherence to "investor guidelines" that "dictate[d] that [it] could not postpone the sale," and not from an intentional act by Freddie Mac to induce Well's Fargo's alleged breach.  In any case, Greenfield's testimony that it "*looks to me* like it was an investor decision," Dkt. No. 92 at ¶ 34 (emphasis added), is too vague to "allow[] the [C]ourt to draw a reasonable inference that [Freddie Mac] is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.  The pleading also fails to identify who Greenfield is other than a "Wells Fargo expert."

In this Court's prior order, it stated it would grant leave to amend this claim "if plaintiff can allege facts sufficient to support each element of the tort [of intentional interference with contract]."  Dkt. No. 89 at 8.  Because Curley has failed to do so on his first amended complaint, the Court GRANTS Freddie Mac's motion to dismiss.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (affirming district court decision to deny leave to amend Second Amended Complaint because plaintiff had "ample opportunity" to properly plead case and failed to comply with district court's instructions

Case No. 13-cv-03805 NC
MOTION TO DISMISS FIRST
AMENDED COMPLAINT                    16

on how to amend complaint); *see also Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (district court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously amended) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

### i.  Statute of Limitations

In California, the statute of limitations is two years for interference with contract or interference with prospective business advantage claims. Code Civ. Proc. § 339(1); *Tu-Vu Drive-In Corp. v. Davies*, 66 Cal.2d 435, 437 (1967). The interference claim accrues from the date of the wrongful act, which can be no later "than the actual breach of the contract by the party who was wrongfully induced to breach." *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974).

Here, the date the statute of limitations began to run was, at the very latest, July 21, 2010—the date that Curley's home was sold in a trustee's sale. Dkt. No. 89 at 10. Curley filed this action on August 17, 2013, more than two years after the date of the sale. *Id.* Freddie Mac contends that Curley's claims for intentional interference with contract is time barred. Dkt. No. 93 at 27.

However, in California, "[t]he discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Korea Supply Co. v. Lockheed Martin Corp.*, 109 Cal. Rptr. 2d 417, 428 (Ct. App. 2001), *rev'd in part on other grounds*, 29 Cal. 4th 1134 (2003). California courts have applied the discovery rule to claims for interference with contract. *See, e.g., Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 531 (N.D. Cal. 2000).

Curley argues that the statute of limitations should be tolled, because he could not have discovered the interference until a deposition on May 17, 2013, when a witness revealed Freddie Mac's role in the loan modification decision. Dkt. No. 99 at 17. To support this proposition, Curley alleges in his amended complaint that "the power to determine compliance with or override the TPP agreement under the circumstances at issue

was held by Freddie Mac . . . was *confirmed* . . . on May 17, 2013." Dkt. No. 92, ¶ 34 (emphasis added). Curley asserts that this date really is the time of discovery of the claim against Freddie Mac. Dkt. No. 99 at 17. However, the term "confirmed" is not tantamount to "discovered." Indeed, Curley admits in his response to Freddie Mac's motion that the word "learned" would be a better substitute for the word "confirmed" in the complaint. *Id.* at 17-18.

Because the complaint does not allege that Curley first *discovered* the claims against Freddie Mac in 2013, the claims against Freddie Mac are time barred and Freddie Mac's motion as to this claim is GRANTED on this ground as well.

## F. Interference With Prospective Economic Advantage Claim Against Freddie Mac (Claim 5)

A plaintiff bringing a claim for the tort of intentional interference with prospective economic advantage must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003) (internal quotation marks omitted). A plaintiff seeking to recover for intentional interference with prospective economic relations must "prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). An act is independently wrongful "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal. 4th at 1159.

In this Court's prior order granting Curley's motion for leave to amend based on a proposed amended complaint, it stated that Curley still "does not state facts sufficient to

establish a reasonable inference that Freddie Mac intentionally acted to disrupt the economic relationship between plaintiff and Wells Fargo." Dkt. No. 89 at 9 (citing *Iqbal*, 556 U.S. at 633). The Court further explained that Curley "insufficiently alleges facts to support the proposition that Freddie Mac 'engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.'" *Id.* (quoting *Della Penna*, 11 Cal. 4th at 393). This Court gave leave to amend to the extent Curley can allege facts to support his assertions. *Id.* at 9-10.

Here, Curley's claim for intentional interference with prospective economic advantage remains almost identical to his claim in his proposed amended complaint. *Compare* Dkt. No. 79 at 16-18 (Proposed Amended Complaint), *with* Dkt. No. 92 at 16-18 (First Amended Complaint). Curley does add two new paragraphs alleging that he suffered damage as a "direct and proximate result" of Freddie Mac's conduct. Dkt. No 92 at ¶¶ 38, 42. But just as in the proposed amended complaint, Curley still does not allege facts to demonstrate that Freddie Mac intentionally acted to disrupt the economic relationship between Curley and Wells Fargo. Curley also again fails to allege facts in the paragraph asserting independent wrongful conduct by Freddie Mac; instead, Curley merely cites the same statutes and caselaw in the prior complaint, and makes the same conclusory assertion that "Defendant's actions were independently wrongful." Dkt. No. 92 at ¶ 41.

Because Curley has already had one opportunity to properly plead this claim, and failed to comply with the Court's order instructing him on how to amend the complaint, the Court GRANTS Freddie Mac's motion. *See Salameh*, 726 F.3d at 1133 (affirming district court decision to deny leave to amend Second Amended Complaint because plaintiff had "ample opportunity" to properly plead case and failed to comply with district court's instructions on how to amend complaint).

**i. Statute of Limitations**

As stated in the previous section, the statute of limitations is two years for interference with prospective business advantage claims. Code Civ. Proc. § 339(1); *Tu-Vu Drive-In Corp.*, 66 Cal.2d at, 437. The interference claim accrues from the date of the

wrongful act, unless California's "discovery rule" applies. *Korea Supply Co.*, 109 Cal. Rptr. 2d at 428.

Here, just like in his interference with contract claim, Curley fails to allege that he first *discovered* Freddie Mac's alleged interference with prospective economic advantage in 2013. Without such an allegation, the Court treats the date that Curley's home was sold in a trustee's sale, July 21, 2010, as the date the statute of limitations began to run. Accordingly, the Court GRANTS Freddie Mac's motion as to this claim on this ground as well.

## IV.  CONCLUSION

For the reasons stated above, the Court DENIES Wells Fargo's motion to dismiss Curley's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional fraud. As to the constructive fraud claim, the Court DENIES Well's Fargo's motion in part, but GRANTS it to the extent Curley alleges that Wells Fargo's failure to disclose Freddie Mac's involvement in the loan modification process constitutes constructive fraud. The Court GRANTS Freddie Mac's motion to dismiss Curley's claims for intentional interference with contract, and intentional interference with prospective economic advantage. Because the Court did not rely on the documents in defendants' request for judicial notice, the Court DENIES the request for judicial notice.

Curley must file his Second Amended Complaint within 14 days of this order.

IT IS SO ORDERED.

Date:  December 23, 2014

Nathanael M. Cousins
United States Magistrate Judge

Case No. 13-cv-03805 NC
MOTION TO DISMISS FIRST
AMENDED COMPLAINT                         20