1

2

3

4

5

6

7            UNITED STATES DISTRICT COURT

8          NORTHERN DISTRICT OF CALIFORNIA

9

10   DAVID M. CURLEY,

11              Plaintiff,                    Case No. 13-cv-03805 NC

12       v.                                   **ORDER GRANTING DEFENDANTS'**
                                              **MOTION FOR SUMMARY**
13   WELLS FARGO & COMPANY;                   **JUDGMENT**
     WELLS FARGO BANK, N.A.; and              Re: Dkt. No. 119
14   WELLS FARGO HOME MORTGAGE,

15              Defendants.

16

17        In this wrongful foreclosure case, plaintiff David Curley brings breach-of-contract

18   and fraud claims against defendant Wells Fargo.  Curley argues that Wells Fargo failed to

19   abide by the terms of a Trial Period Plan when it failed to offer him a permanent loan

20   modification and initiated foreclosure proceedings against him despite his compliance with

21   the TPP's terms.  Wells Fargo moves for summary judgment on all of Curley's causes of

22   action.  A key part of the TPP states, "If you qualify under the federal government's Home

23   Affordable Modification program *and comply with the terms of the Trial Period Plan*, we

24   will modify your mortgage loan and you can avoid foreclosure."  Dkt. No. 119-6 at 5

25   (emphasis added).  The primary issue this Court must decide is whether Curley complied

26   with the terms of the TPP; without such compliance, Wells Fargo contends that Curley

27   failed to perform his contractual obligations and his claims fail.

28        The Court agrees with Wells Fargo.  Specifically, because Curley failed to perform

Case No. 13-cv-03805 NC

his obligations under TPP by not submitting his IRS Form 4506-T, and for the reasons discussed below, the Court GRANTS Wells Fargo's summary judgment motion as to Curley's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, constructive fraud, and intentional fraud.

## I.      BACKGROUND

### A.      Factual Background

This case stems from Curley's failed attempt to secure a loan modification and the subsequent foreclosure sale of his home.  In 2006, Curley obtained a $356,000 fixed-rate loan from Wells Fargo Bank, secured by his home in Burlingame, California.  Dkt. No. 106 at 4 (Second Amended Complaint).  As a result of the economic downturn in 2008 and 2009, Curley's coin-operated amusement and vending business struggled, and Curley's income declined.  *Id.*  He eventually defaulted on his loan.  *Id.*  A notice of default was recorded on November 2, 2009.  *Id.*  Under the Home Affordable Modification Program, Wells Fargo agreed to review Curley for a loan modification by offering him a Trial Period Plan.  *Id.*

The offer under the TPP stated, "If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure."  Dkt. No. 119-6 at 5 (Trial Period Plan).  Another part of the offer stated: "As long as you comply with the terms of the Trial Period Plan we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started."  *Id.* at 8 (under "frequently asked questions" section).

This TPP offer further stated: "To accept this offer, and see if you qualify for a Home Affordable Modification, fax items 1, 3, 4 and 5 listed below . . . and use the enclosed return envelope to return your 1st payment no later than 01/30/2010."  Dkt. No. 119-6 at 6.  In particular, item 5 of the TPP offer required "[d]ocumentation to verify all of the income of each borrower[,]" including a "[c]opy of the most recent filed federal tax return with all schedules[.]"  *Id.*  TPP item 4 required a "signed and dated copy of the IRS

Case No. 13-cv-03805 NC                    2

Form 4506-T (Request for Transcript of Tax Return) for each borrower . . . ." *Id.* The purpose of the IRS Form 4506-T is to give the loan servicer consent to obtain copies of a borrower's tax returns. *See* Dkt. No. 135-5 at 12 (Ferguson Dep.) ("It's an IRS form that, once the borrower signs it, the financial institution can send that to the IRS to get a transcript of the income tax return.").

To accept the offer, the TPP required Curley to "send in both signed copies of the Trial Period Plan, all required income documentation, and [his] first trial period payment by . . . 02/01/2010." Dkt. No. 119-6 at 6. The TPP did make the following clarification under the heading "Important Program Info": "The Trial Period Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement . . . ." Dkt. No. 119-6 at 7.

According to Curley, he timely accepted this TPP offer on January 3, 2010, and formed a contract with Wells Fargo. Dkt. No. 106 at 7. Curley alleges that he made three loan payments of $1,836.75 under this TPP contract on the first of each month beginning February 1, 2010, through April 1, 2010. *Id.* at 6-7. He made an additional payment in May, but his additional payment for June 1, 2010, was rejected without explanation from Wells Fargo. *Id.* Curley states that he also submitted a hardship application, his most recent tax return, profit and loss statements, and proof of income and expenses. *Id.* at 5.

Wells Fargo, however, contends that Curley failed to submit his most recent tax returns or his IRS Form 4506-T. Dkt. No. 119-6 at ¶¶ 8-10 (Mulder Decl.). According to Wells Fargo, because Curley failed to submit a complete loan modification application, it sent Curley a letter on June 10, 2010, denying his modification application. *Id.* at ¶ 10; Dkt. No. 119-6 at 61-62 ("We are unable to offer you a Home Affordable Modification because you did not provide us with the documents we requested.").

On July 1, 2010, a notice of sale was recorded. Dkt. No. 106 at 6. On July 21, 2010, Wells Fargo's agent, Cal-Western Reconveyance Corporation, conducted a trustee's sale and KMA Properties, LLC purchased Curley's home. *Id.* According to Curley, the

1    sale took place despite the fact that he "provided all required documentation and otherwise
2    complied with his obligations under the TPP." *Id.*

3         The gravamen of Curley's complaint is that Wells Fargo failed to abide by the terms
4    of the TPP when it failed to offer him a permanent loan modification, and, instead, took
5    steps to foreclose on Curley's property even though Curley "was in compliance with his
6    obligations under the TPP contract." *Id.* at 3-4.

7    **B.   Procedural History**

8         Curley filed suit against Wells Fargo and KMA Properties, LLC in the San Mateo
9    County Superior Court on August 12, 2010. Dkt. No. 67 at 3 (citations omitted). In that
10   lawsuit, Curley asserted claims for breach of contract, promissory fraud, constructive
11   fraud, actual fraud, quiet title, breach of fiduciary duties, and conversion. *Id.* Discovery
12   occurred between 2010 and February 2013 when Wells Fargo filed a motion for summary
13   judgment in state court. *Id.* The state court issued a tentative ruling, finding no disputed
14   issues of material fact because it was undisputed that Curley did not provide verifiable
15   proof of his income under the TPP. *Id.* Before the state court ruled on the motion for
16   summary judgment, however, Curley moved to dismiss the action. *Id.* The San Mateo
17   County Superior Court dismissed Curley's case without prejudice on July 11, 2013. *Id.*

18        On July 17, 2013, Curley filed this action in the San Francisco Superior Court
19   against defendants Wells Fargo[1] and The Federal Home Loan Mortgage Corporation
20   (Freddie Mac) asserting claims for wrongful disclosure, breach of implied covenant of
21   good faith and fair dealing, constructive fraud, intentional fraud, promissory fraud,
22   intentional infliction of emotional distress, and declaratory relief. Dkt. No. 1 at 28 (state
23   court complaint). Defendants removed to this Court on August 16, 2013. Dkt. No. 1.
24   Defendants then moved to dismiss Curley's claims. Dkt. No. 4. Curley moved to remand
25   the action to state court and responded to the motion to dismiss. Dkt. Nos. 25, 27.

26

27   _____
     [1] According to defendant Wells Fargo, "Wells Fargo Bank, N.A." is the proper entity, and
     Curley erroneously sued defendant as "Wells Fargo Bank, N.A., Wells Fargo Home
28   Mortgage, a division of Wells Fargo Bank, N.A. and Wells Fargo & Company[.]" Dkt.
     No. 1 at 1 (Notice of Removal).

1   Because the parties asked the Court to rely on evidence not properly before the Court on a

2   motion to dismiss, the Court converted the motion to dismiss into a motion for summary

3   judgment pursuant to Federal Rule of Civil Procedure 12(d).  Dkt. No. 48.

4       The Court then denied Curley's motion to remand the case to state court as well as a

5   request by Curley for Rule 56(d) discovery.  Dkt. No. 67.  Additionally, the Court granted

6   defendants' motion for summary judgment on Curley's wrongful foreclosure, fraud,

7   intentional infliction of emotional distress, and declaratory judgment claims.  The Court

8   granted summary judgment as to Freddie Mac on the breach of implied covenant of good

9   faith and fair dealing claim, but denied summary judgment on that claim with respect to

10  Wells Fargo.  *Id.*

11      Following that summary judgment order, the Court granted Curley's motion for

12  leave to amend his complaint to add claims for breach of contract, as well as intentional

13  and constructive fraud against Wells Fargo, and claims for interference with contract and

14  interference with prospective economic advantage claims against Freddie Mac.  Dkt. No.

15  89.  Curley subsequently filed a First Amended Complaint, alleging these claims, in

16  addition to the claim for breach of the implied covenant of good faith and fair dealing,

17  which survived summary judgment.  Dkt. No. 92.  Wells Fargo moved to dismiss Curley's

18  First Amended Complaint.  Dkt. No. 93.

19      The Court denied defendants' motion to dismiss Curley's claims for breach of

20  contract, breach of the implied covenant of good faith and fair dealing, and intentional

21  fraud against Wells Fargo.  Dkt. No. 106.  As to the constructive fraud claim, the Court

22  denied defendants' motion in part, but granted it to the extent Curley alleged Wells Fargo's

23  failure to disclose Freddie Mac's involvement in the loan modification process constituted

24  fraud.  *Id.* at 11-12.  The Court, however, granted defendants' motion to dismiss Curley's

25  claims against Freddie Mac for intentional interference with contract, and intentional

26  interference with prospective economic advantage.  Thus, none of Curley's claims against

27  defendant Freddie Mac survived the motion to dismiss.

28      Wells Fargo now moves for summary judgment on Curley's remaining four claims

1  alleged against Wells Fargo in the Second Amended Complaint.  Dkt. No. 106.

2       All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C.

3  § 636(c).  Dkt. Nos. 21, 23.

4  **II.  LEGAL STANDARD**

5       Summary judgment may be granted only when, drawing all inferences and

6  resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any

7  material fact.  Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014);

8  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under

9  governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty*

10  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the

11  evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

12  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of*

13  *L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

14       The moving party bears the burden of identifying those portions of the pleadings,

15  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

16  *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving

17  party must go beyond the pleadings, and, by its own affidavits or discovery, set forth

18  specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c);

19  *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.*

20  *Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however,

21  must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at

22  1863 (citing *Liberty Lobby*, 477 U.S. at 255).

23  **III.  DISCUSSION**

24      **A.    Evidentiary Objections**

25       As a threshold matter, the Court addresses Curley's objection to evidence

26  introduced by Wells Fargo.  The Court will only address objections to evidence it

27  considered in reaching its conclusions.  Wells Fargo submitted the declaration of Alisha

28  Mulder, Vice President of Loan Documentation for Wells Fargo Bank, N.A., in support of

*United States District Court*
*Northern District of California*

its summary judgment motion. Dkt. No. 119-6. Curley argues that her declaration is not a proper business records declaration and does not provide proper foundation or authentication under Federal Rules of Evidence 803(6) and 902(11). Dkt. No. 124 at 1-3. In particular, Curley asserts that Mulder is not a custodian or other qualified witness of the referenced documents attached to her declaration, and has no personal knowledge of the facts of this case. *Id.* Curley further objects that Mulder was not disclosed as a witness by Wells Fargo under Federal Rule of Civil Procedure 26 and therefore should be excluded under Rule 37. Dkt. No. 128 at 2-3.

### 1.   Rule 803(6) Objection

Federal Rule of Evidence 803(6) provides an exception to the hearsay rule and makes a business record admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The Ninth Circuit has set a low bar for what constitutes "another qualified witness"; indeed, "[t]he phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." *United States v. Ray,* 930 F.2d 1368, 1370 (9th Cir.1990) (finding that welfare fraud investigator familiar with the reporting and filing requirements for public assistance benefits was an "other qualified witness" although she was not custodian of record); *United States v. Basey,* 613 F.2d 198, 201 n.1 (9th Cir. 1979) (college records properly admitted to establish defendant's address even though custodian neither recorded the information herself nor did she know who did). Federal Rule of

United States District Court
Northern District of California

1   Evidence 902(11) also states that the business-record "proponent must give an adverse

2   party reasonable written notice of the intent to offer the record—and must make the record

3   and certification available for inspection—so that the party has a fair opportunity to

4   challenge them" before the trial or hearing.

5        Here, Mulder is Vice President of Loan Documentation for Wells Fargo Bank.  Dkt.

6   No. 119-6.  She states that she "personally reviewed Wells Fargo's records pertaining to

7   the Subject Loan, including the loan origination, servicing and foreclosure files."  *Id.* at ¶

8   2.  She also states that Wells Fargo made the records concerning Curley's loan in the

9   ordinary course of business.  She adds that the records were made at or near the time of the

10  events recorded by persons whose job it is to make such records, or received in accordance

11  with Wells Fargo's ordinary course of business.  *Id.*  These statements establish her

12  familiarity with the records attached to her declaration.  There is no requirement that she or

13  Wells Fargo establish when and by whom the documents were prepared.  *Ray*, 930 F.2d at

14  1370 (citing *United States v. Huber*, 772 F.2d 585, 591 (9th Cir.1985) ("there is no

15  requirement that the government show precisely when the [record] was compiled")).

16  Curley has also not shown how Mulder's declaration and the record keeping she describes

17  indicate a lack of trustworthiness.

18       Based on her declaration, and the fact that Curley was given an opportunity to

19  challenge the declaration and the attached documents, all factors under Rule 803(6) and

20  Rule 902(11) have been met.  Mulder is qualified to testify as to records kept by Wells

21  Fargo concerning Curley's loan, including documents related to the TPP.  Accordingly,

22  Curley's objections as to Mulder's declaration and accompanying exhibits are overruled.

23           **2.    Rule 26 Objection**

24       Under Federal Rule of Civil Procedure 26(a)(1)(A), except in cases exempted by

25  rule or court order, each party must provide to the other parties the name and, if known, the

26  address and telephone numbers of each individual "likely to have discoverable

27  information."  Fed. R. Civ. P. 26(a)(1(A)  The time for the initial disclosures is "at or

28  within 14 days" after the Rule 26(f) planning conference, unless a different time is set by

Case No. 13-cv-03805 NC                8

1    stipulation or court order.  Fed. R. Civ. P. 26(a)(1)(C).  Furthermore, a party must make its

2    initial disclosures based on the information then reasonably available to it.  A party is not

3    excused because it has not fully investigated the case.  Fed. R. Civ. P. 26(a)(1)(E).  Finally,

4    a party must supplement its initial disclosures in a "timely manner" if it learns that its

5    initial disclosures are incomplete or incorrect.  Fed. R. Civ. P. 26(e).

6           In this case, no court order or stipulation extended the time period for initial

7    disclosures under Rule 26.  The case was removed to federal court almost two years ago,

8    on August 16, 2013.  Accordingly, by rule, the time period for initial disclosures has long

9    passed.

10          Federal Rule of Civil Procedure 37 gives teeth to the initial disclosure requirements.

11    Under Rule 37(c), if a party fails to identify a witness as required by the rules, then the

12    party is not allowed to use that witness to provide evidence on a motion, at a hearing, or at

13    trial, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c);

14    *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  A

15    "district court has wide discretion in controlling discovery."  *Ollier v. Sweetwater Union*

16    *High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) (internal quotation marks and citation

17    omitted).  And "that discretion is 'particularly wide' when it comes to excluding witnesses

18    under Rule 37(c)(1)."  *Id.* (quoting *Yeti by Molly*, 259 F.3d at 1106).

19          Here, Wells Fargo admits that it did not disclose Mulder under Rule 26, but

20    nonetheless contends that the error was harmless.  The Court does not wish to encourage

21    violations of Rule 26, but finds this violation to be harmless.  The crux of Mulder's two-

22    page declaration is her assertion that Curley failed to submit a complete loan modification

23    application under the TPP, including failing to submit a copy of his IRS Form 4506-T.  A

24    review of the deposition of Robert Ferguson, who Wells Fargo designated as the "person

25    most qualified" to testify as to the business records that contain information about

26    borrowers' loans, reveals that Curley had a fair and full opportunity to question Wells

27    Fargo's witness about the loan modification application materials and the IRS Form 4506-

28    T.  Dkt. No. 135 at ¶¶ 2-3 (Wraight Decl. describing deposition notice and attaching

United States District Court
Northern District of California

1    Ferguson deposition); *see* discussion *infra* Section III.B. (describing exchange between

2    Ferguson and Curley's counsel during deposition as to the IRS Form 4506-T).  Given that

3    Curley had an opportunity to depose Ferguson, and did question him about the loan

4    modification application materials, the Court finds Wells Fargo's failure to disclose

5    declarant Alisha Mulder harmless.

6    **B.    Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

7            A successful breach-of-contract claim must establish four elements: (1) the

8    existence of a contract; (2) plaintiff's performance of the contract or excuse for

9    nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff.  *Lortz v.*

10   *Connell*, 273 Cal. App. 2d 286, 290 (1969); *McNeary-Calloway v. JP Morgan Chase*

11   *Bank, N.A.*, No. 11-cv-03058 JCS, 863 F. Supp. 2d 928, 954 (N.D. Cal. 2012).

12           In this case, Wells Fargo does not challenge the TPP's existence as the contract;

13   rather, Wells Fargo's primary contention is that Curley failed to perform under the TPP.

14   According to Wells Fargo, Curley failed to perform his contractual obligations under the

15   TPP by not submitting his IRS Form 4506-T and federal tax returns for 2008 and 2009 to

16   Wells Fargo.  Dkt. No. 119 at 15.

17           **1.    IRS Form 4506-T**

18           To support its position that Curley failed to perform under the TPP, Wells Fargo

19   points to a declaration provided by Wells Fargo's Vice President of Loan Documentation,

20   Alisha Mulder.  Dkt. No. 119-6.  In her declaration, Mulder states that "[b]etween January

21   2010 and June 2010, Plaintiff did not provide to Wells Fargo verifiable proof of income,

22   including his recent tax returns or IRS Form 4506-T."  Dkt. No. 119-6 at ¶ 8.

23           Curley responds by arguing that he submitted all financial documentation required

24   by the TPP.  Dkt. No. 123.  To support his statement, Curley points to Wells Fargo's "loss

25   mitigation notes," which purportedly show "Wells Fargo received the specific documents

26   requested in January 2010."  Dkt. No. 123-1 at ¶ 5 ("Wells Fargo's loss mitigation notes

27   (LMT) show Wells Fargo received the specific documents it claimed it had not received.").

28

United States District Court
Northern District of California

1   Curley also questions the materiality of the IRS Form 4506-T as a requirement under the

2   TPP.

3          The Court does not find Curley's arguments persuasive; in not submitting the IRS

4   Form 4506-T, Curley failed to perform under the TPP.  As the moving party, Wells Fargo

5   satisfied its burden to produce evidence supporting its motion in the form of Mulder's

6   declaration.  In that document, Mulder states that "[b]etween January 2010 and June 2010,

7   Plaintiff did not provide to Wells Fargo verifiable proof of income, including his . . . IRS

8   Form 4506-T."  Dkt. No. 119-6 at ¶ 8.  Wells Fargo also submitted as evidence the TPP

9   agreement itself, which unambiguously required Curley to submit a "signed and dated

10  copy of the IRS Form 4506-T" to Wells Fargo.  Dkt. No. 119-6 at 6.  With Wells Fargo

11  having met its initial burden, the law requires nonmoving party Curley to bring forth

12  evidence beyond his complaint to show a genuine dispute of material fact.

13         Here, Curley fails to do so.  To be sure, Curley does submit a declaration in which

14  he asserts: "Wells Fargo's loss mitigation notes (LMT) reflect that documentation

15  verifying plaintiff's income, swearing a hardship affidavit, providing IRS Form 4506-T,

16  profit and loss statements, tax returns, financial statements and all in house data was

17  completed by January 29, 2010."  Dkt. No. 123-1 at ¶ 13 (internal quotation marks

18  omitted).  Curley also submits an excerpt from the deposition of Robert Ferguson, a Loan

19  Administration Manager at Wells Fargo.  Dkt. No. 123-2 at 24-27 (Ferguson Decl.).

20  Curley contends that this deposition, along with Wells Fargo's loss mitigation notes,

21  demonstrate Wells Fargo's receipt of the IRS Form 4506-T.

22         Even with this evidence, however, the Court finds that Curley fails to create a

23  genuine issue of fact as to whether Curley sent Wells Fargo an IRS Form 4506-T in

24  response to the TPP's requirements.  Curley neither states in his declaration that he timely

25  submitted the IRS Form 4506-T, nor does he attach the form itself to his declaration.

26  Additionally, Curley has not presented deposition testimony or any other evidence that can

27  explain the loss mitigation notes, or interprets their meaning.  The Court does not know

28  what Wells Fargo's loss mitigation notes prove because these documents themselves are

almost unintelligible without more context; they consist of a series of codes corresponding to short-hand descriptions of various documents.  *See* Dkt. Nos. 123-1 at 29 (Exhibit C to Curley Decl.), 123-1 at 28 (Exhibit F to Curley Decl.).  Indeed, at the summary judgment hearing, the Court handed plaintiff's counsel a copy of the loss mitigation notes attached to Curley's declaration.  After glancing at the loss mitigation notes, plaintiff's counsel looked up, and, loss mitigation notes in hand, stated to this Court: "I don't know what this means." Dkt. No. 134 (summary judgment hearing), Tr. at 07/22/15, 1:48-1:49 (statement from counsel Richard Canatella); *see also id.* at 2:05-2:06 (counsel David Olick referring to loss mitigation notes in Exhibit F as "ambiguous").

Still, Curley emphasizes that Ferguson, in his deposition, referenced Wells Fargo's loss mitigation notes.  *See* Dkt. No. 123-1 at ¶ 13.  But because the deposition was not produced in its entirety, the Court at the summary judgment hearing ordered Wells Fargo to produce to the Court the Ferguson deposition in its entirety.

Upon review of the full deposition, however, the Court does not find any statements suggesting Wells Fargo received the IRS Form 4506-T from Curley.  Dkt. No. 123-2 at 24-27.  To the contrary, it reveals the opposite.  For instance, at one point in the examination, Curley's counsel asked Ferguson whether he could determine from his review of Wells Fargo's computer logs that Wells Fargo received the IRS 4506-T Form from Curley.  Dkt. No. 135-5 at 12.  In response, Ferguson stated that despite his review of Curley's "document submissions from 2009 through 2010" he "did not see a 4506T" form.  *Id.*

Even so, Curley questions the materiality of the IRS Form 4506-T.  His counsel stated at the summary judgment hearing that Curley's failure to submit the IRS Form 4506-T "is not a material breach." Dkt. No. 134, Tr. at 07/22/15, 2:05-2:07.  The Court disagrees.  The Court finds that the IRS Form 4506-T prerequisite is a material term to the TPP.  The TPP specifically lists "a signed and dated copy of the IRS Form 4506-T" as one of five items required for Curley to accept the TPP offer and to qualify for a "Home Affordable Modification." Dkt. No. 119-6 at 6.  In addition, the federal government's Home Affordable Modification Program Supplemental Directive 09-01 instructs the

United States District Court
Northern District of California

1    borrower to provide an IRS 4506-T Form to the loan servicer.  *Id.* at 26 (Exhibit A to

2    Mulder Decl.) (Home Affordable Modification Program Supplemental Directive 09-01,

3    April 6, 2009).  Without the IRS Form 4506-T, the loan servicer does not have the

4    borrower's consent to obtain copies of the borrower's tax returns from the IRS.  *See* Dkt.

5    No. 135-5 at 12 (Ferguson Dep.).

6         In sum, while all facts should be interpreted at the summary judgment stage in favor

7    of the non-moving party, the evidence that Curley cites is simply not sufficient to show a

8    genuine dispute of fact over whether he submitted an IRS Form 4506-T to Wells Fargo.

9    *See, e.g.*, *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) ("Once

10   a summary judgment motion is made and properly supported, the adverse party may not

11   rest on the mere allegations of his pleadings, but must set forth specific facts showing that

12   there is a genuine issue for trial.").

13        **2.    Tax Returns**

14        The Court, however, disagrees with Wells Fargo's argument that the TPP required

15   Curley to submit his federal tax returns from 2008 and 2009.  The TPP offer did not

16   expressly require Curley to submit his 2008 and 2009 tax returns.  Instead, the TPP offer

17   required "[d]ocumentation to verify all of the [i]ncome of each borrower[,]" including a

18   "[c]opy of the *most recent filed federal tax return* with all schedules[.]"  Dkt. No. 119-6 at

19   6. (emphasis added).  Curley states in his declaration that on January 3, 2010, when Curley

20   sent Wells Fargo the signed copies of the TPP and other TPP-related paperwork, the "most

21   recently filed federal tax return" in his possession was his 2007 tax return.  Dkt. No. 123-1

22   at ¶ 14.  Curley declares that he sent his 2007 tax return to Wells Fargo, as evidenced by a

23   copy of the 2007 tax return bearing Wells Fargo's bate stamp.  Dkt. No. 123-1 at 30.  As

24   such, Curley's submission of his 2007 tax return "met the literal requirements" of the TPP

25   term: "most recent filed federal tax return."  *See* Dkt. No. 123-1 at ¶ 14; Dkt. No. 123-1 at

26   30.

27        Admittedly, although Curley's declaration does not expressly state whether Curley

28   submitted the 2007 tax return before the expiration of the TPP offer, the Court is required

to "draw[] all reasonable inferences in favor of the nonmoving party[.]"  *Vander v. U.S. Dep't of Justice*, 268 F.3d 661, 663 (9th Cir. 2001).  In light of Curley's declaration and the copy of the 2007 tax return bearing Wells Fargo's bate stamp, the Court must infer that Curley submitted the tax return by the deadline to accept the TPP offer.  Moreover, Wells Fargo has not presented evidence that Curley failed to submit his 2007 tax return.  Because Wells Fargo has not contested a fact established by Curley with any evidence, the Court, construing all facts in favor of the moving party, finds that Curley's submission of his 2007 federal tax return is sufficient to satisfy that particular material term of the TPP.

Nonetheless, because Curley did not submit an IRS 4506-T Form, he failed to perform under the TPP.  Consequently, Curley's breach-of-contract claim fails and the Court GRANTS Wells Fargo's summary judgment motion.

Similarly, Curley's claim for breach of implied covenant of good faith and fair dealing also fails and the Court GRANTS Wells Fargo's summary judgment motion as to that claim.  *See Levy v. JP Morgan Chase*, No. 10-cv-01493 DMS (BLM), 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010) ("A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting.").

## C.    Fraud Claims

"A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon." *Moreno v. Wells Fargo Home Mortg.*, 2015 U.S. Dist. LEXIS 71285, at *14-15 (E.D. Cal. June 1, 2015) (quoting *Seeger v. Odell*, 18 Cal. 2d 409, 414-15 (1941)).

Here, Curley brings two additional claims against Wells Fargo based on intentional fraud and constructive fraud.  These fraud claims assert that Wells Fargo made misrepresentations in the TPP that "as long as Curley complied with the terms of the agreement, Wells Fargo would not start foreclosure proceedings."  Dkt. No. 106 at ¶ 22

Case No. 13-cv-03805 NC                    14

1    ("Third Claim for Intentional Fraud Against Wells Fargo"); *id.* at ¶ 20 ("Second Claim for

2    Constructive Fraud Against Wells Fargo") ("Under the TPP, Wells Fargo expressly

3    committed not to begin foreclosure proceedings as long as Curley complied with the terms

4    of the TPP.").  Both fraud claims, however, assume that "Curley complied with all his

5    requirements under the TPP."  *Id.* at ¶ 20.

6         But as discussed above, Curley failed to comply with the terms of the TPP.  As

7    such, Wells Fargo's decision to start foreclosure proceedings does not contravene the

8    statements they made in the TPP.  Put differently, a reasonable juror would not find Wells

9    Fargo's statements to be made with knowledge that they are untrue; its promise to not

10   foreclose on Curley's property hinged on his compliance with the TPP.  And as there is no

11   material factual dispute over Curley's failure to perform, and because the Court already

12   found that Curley's breach-of-contract claim falls, the Court finds that Wells Fargo's

13   statements do not constitute intentional or constructive fraud.  *See, e.g., Jenkins v.*

14   *Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 796 (9th Cir. 1996) (affirming fraud

15   claim's dismissal because where defendant had fulfilled its contractual obligations and

16   plaintiff failed to show contract was breached, "the alleged representation is not false, and

17   therefore not fraudulent") (citing *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Securities*

18   *Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) ("The statement in question must be

19   false to be fraudulent.")); *but see Custom Led, LLC v. eBay, Inc.*, No. 12-cv-00350 SI,

20   2012 U.S. Dist. LEXIS 72721, at *11-12 (N.D. Cal. May 24, 2012) (rejecting defendants'

21   argument that fraud claims "based on the same allegations as the breach of contract claim"

22   fail, where court found plaintiff sufficiently stated a breach of contract claim).

23        Accordingly, the Court GRANTS Wells Fargo's summary judgment motion as to

24   Curley's fraud claims.

25   //

26

27

28

United States District Court
Northern District of California

**IV.   CONCLUSION**

For the reasons stated above, the Court GRANTS Wells Fargo's summary judgment motion as to Curley's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, constructive fraud, and intentional fraud.

**IT IS SO ORDERED.**

Dated:  July 31, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge